James O. Moose, J.
These are motions made upon behalf of the defendants listed in Appendix A*, as well as the above-named defendants who have appeared by separate counsel, for pretrial discovery and inspection pursuant to CPL article 240 and the provisions of the Constitutions of the United States and *1044 New York State pertaining to fair trial. The moving defendants are variously named in 37 separate indictments.
Traditionally, the scope and extent of discovery to be afforded to individual defendants or defendants named in the same indictment should be judicially determined in the light of the charges alleged in each such indictment. Nonetheless, all of the defendants are, to a degree, similarly situated in that the indictments at bar were returned by a Special Grand Jury of Wyoming County impaneled in connection with an Additional Special and Trial Term of this court to inquire into acts relating to the possession and control of a portion of the Attica Cdrrectional Facility by inmates during the period September 9 to 13, 1971, and the resumption of possession and control by lawful authorities. All of the charges made in the indictments relate to events during the course of the uprising at Attica State Prison during the period of September 9 through September 13, 1971. Accordingly, the court has entertained an omnibus discovery motion made on behalf of some 43 defendants represented for the purpose of the motions by the co-ordinator of the Attica Legal Defense, as well as individual motions made on behalf of certain of the other defendants. Since all of the motions bear a large degree of similarity with respect to the scope and extent of the pretrial discovery sought, this memorandum opinion will serve as the court’s determination of the motions at bar, and separate orders should be submitted with respect to the individual or multiple defendants named in each of the indictments.
I. CRIMINAL DISCOVERY IN NEW YORK
Common-law courts have no power to compel the pretrial discovery of evidentiary material in either civil or criminal cases, and it was left to the courts of equity to devise a remedy in the form of a separate proceeding for a bill of discovery. (McQuigan v. Delaware, Lackawanna & Western R. R. Co., 129 N. Y. 50.)
Even before the adoption of the Field Code in 1848, the power to grant this form of equitable relief in civil cases was afforded to common-law courts by succeeding statutory enactments governing practice and procedure, and culminating in the enactment cf the broad discovery proceeding contained in the Civil Practice Law and Rules.
Prior to the enactment of the Criminal Procedure Law of 1971, no parallel development was to be found on the criminal side and, as a consequence, there was no effective pretrial discovery in criminal cases. Indeed, as late as 1927 Chief Judge *1045 Cabdozo in People ex rel. Lemon v. Supreme Ct. (245 N. Y. 24, 32) declined “ to affirm or deny the existence of an inherent power in courts of criminal jurisdiction to compel the discovery of documents in furtherance of justice.” This anomalous state of the law became the subject of widespread critical comment, and despite the reservations expressed by the Court of Appeals, the trial and intermediate appellate courts of the State granted limited discovery in criminal cases on an ad hoc basis. (Matter of Silver v. Sobel, 7 A D 2d 728; People v. Rogas, 158 Misc. 567; People v. Preston, 13 Misc 2d 802; Brennan, The Criminal Prosecution: Sporting Event or Quest for Truth?, 1963 Wash. TJniv. L. Q. 279; Traynor, Ground Lost and Found in Criminal Discovery, 1964, 39 N. Y. U. L. Rev. 228; Rezneck, The New Federal Rules of Criminal Procedure, 54 Geo. L. Rev. 1276.)
In actual practice, there was a growing tendency on the part of the District Attorneys to make available to defense attorneys before trial statements made by the accused and other documentary evidence for the purpose of encouraging the disposition of cases by pleas of guilty. At the same time, the course of decision in the Supreme Court of the United States was adding new content to the constitutional concept of fair trial, and the necessity for effecting a liberalization of pretrial discovery procedures in criminal cases became more and more apparent. (See Developments in Law — Discovery, 74 Harvard L. Rev. 940, 1051-1062.)
The 1966 amendment of rule 16 of the Federal Rules of Criminal Procedure (U. S. Code, tit. 18, Appendix, rule 16) materially expanded the scope of discovery in the Federal courts, and served as a pattern for CPL article 240. This legislation was designed and intended 11 to provide a workable body of procedure accommodated to modern times ” and reflects “ a rather moderate middle-of-the-road approach, half way between the extreme liberal position which advocates almost unlimited discovery and the extreme prosecution approach which would permit virtually none.” (See Memorandum of Commission on Revision of Penal Law and Criminal Code, N. Y. Legis. Annual, 1970, pp. 36, 37, 43.) It embodies “ the growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice.” (Dennis v. United States, 384 U. S. 855, 870). Against this background the provisions of article 240 must be construed and applied in the light of the factual complexities involved in the particular ease, always with a view to the overriding consideration of affording defendants the fair trial *1046 mandated by the State and Federal Constitutions. .Since the New York statute is virtually identical with the 1966 revision of rule 16 of the Federal Rules of Criminal Procedure, the Federal experience is important in delineating the scope of the discovery warranted by this legislation. (People v. Leto Bros., 70 Misc 2d 347.)
n. THE PRODUCTION OF MATERIAL REQUIRED BY UNITED STATES V. BRADY AND PEOPLE V, ROSARIO
The motions at bar reach far beyond the orbit of CPL article 240 and its progenitor rule 16 of the Federal Rules of Criminal Procedure. Neither of these codifications attempts to treat the disclosure requirements mandated by Brady v. Maryland (373 U. S. 83) or the procedures required under People v. Rosario (9 N Y 2d 286) with respect to the production upon the trial of prior statements of a witness who has testified for the prosecution. Nonetheless, it is appropriate that these questions be raised at the threshold of this litigation so that standards may be determined for the governance of the trials of these indictments.
BRADY MATERIAL
In Brady v. Maryland (373 U. S. 83, supra) the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused, upon request, violates due process where the evidence is material either to guilt or punishment irrespective of the good faith or the bad faith of the prosecution.
The genesis of Brady is found in the incorporation of the concept of “fair play” into the constitutionally mandated requirement of a fair trial. The rationale is that no person should stand convicted of a crime under circumstances where the Government was in possession of undisclosed evidence which might tend to exculpate the accused. The constitutional mandate does not create further categories of pretrial discovery. (United States v. Cobb, 271 F. Supp. 159; United States v. Callahan, 300 F. Supp. 519; United States v. Dioguardi, 332 F. Supp. 7.)
Moreover, in Moore v. Illinois (408 U. S. 786) the court made clear that there is no constitutional requirement that the prosecution account to the defense for all the investigatory work it has undertaken in the preparation of a case.
Although there can be no disagreement with the principle of law enunciated in Brady, the application of the rule in our existing adversary system has posed difficult problems. (See Prosecutor’s Duty to Disclose, 52 Marq. L. Rev. 516; Brady v. *1047 Maryland and the Prosecutor’s Duty to Disclose, 40 U. Chi. L. Rev. 112.)
The Supreme Court has not specified whether the determination with respect to the" information in the prosecutor’s file should be left to the prosecutor, or whether it should be made by the Trial Judge or defense counsel. The moving defendants contend with considerable force that this crucial decision as to whether particular material is favorable to a defendant cannot, be left to the benevolence of the prosecutor and by analogy to the reasoning of People v. Rosario (9 N Y 2d 286, supra; Dennis v. United States, 384 U. S. 855, supra), argue that counsel for the defendants are the only ones competent to perform this task.
The granting of any such drastic relief would establish an “ open file system ” in New York and, indeed, the initial demand in the omnibus discovery is for all of the files of the prosecutor relating to the events at Attica during the period in question. No court in this State, nor any Federal court, has ever required the prosecution to afford a general unlimited right of discovery to a criminal defendant. (Moore v. Illinois, 408 U. S. 786, supra; United States v. Evanchik, 413 F. 2d 950.) Although the “ open file system ” prevails in at least one jurisdiction and may, indeed, prove practicable in the administration of the routine day-to-day work of a District Attorney’s office, it is not a component of the constitutional right to a fair trial, and the courts in this State are effectively precluded from granting such a relief by the explicit provisions of CPL 240.10 (subd. 3) and CPL 240.20 (subd. 3) which deal with “ exempt property ”.
It has been suggested that the selection of the material in the prosecutor’s files, which might prove favorable to the defense of the charges contained in the indictments, should be undertaken by the court as an in camera inspection of the Grand Jury minutes and the documents contained in such files. (Williams v. Dutton, 400 F. 2d 797.) Putting to one side the additional burden that such a practice would place upon the judicial system, this suggestion affords no real solution to the Brady problem because at the pretrial stage of the litigation at a time when no issues have been defined, the court is the least knowledgeable of the parties on this score, particularly in complex criminal proceedings. (United States v. Frazier, 394 F. 2d 258; United States v. Cobb, 271 F. Supp. 159, supra.)
While an in camera inspection by the court may prove practicable when the discovery demands involve specifically identified documents such as the written promise of immunity which were the principal materials sought in Williams v. Dutton (400 F. *1048 2d 797, supra), such a procedure would be totally unworkable in the face of the sweeping demands made by the instant motions.
As Judge Mansfield noted in United States v. Cobb (271 F. Supp. 159, 164, n. 4, supra) ‘1 cogent criticisms can be made of the choice of any of the three possible individuals, prosecutor, judge, or defense attorney, to make the selection of what evidence must be turned over to the defendant as exculpatory.” Nonetheless, the majority of courts and commentators who have dealt with this dilemma are agreed that the preferred practice is to leave the burden of complying with the mandates of due process on the prosecutor, where the Supreme Court has placed it. The Deputy Attorney-General on the argument of these motions, and in his brief has fully acknowledged his responsibility in this respect. Despite the misgivings expressed by counsel for the defendants, this court is prepared to rely on the integrity of the prosecutor and to assume that he will discharge his obligations in accordance with his oath, with full realization that the ominous sanction for failing to disclose appropriate material will be the nullification of the proceedings had herein.
The extent of the prosecutor’s duty in this respect cannot be overemphasized. The mandate of Brady cuts across and supersedes statutory restrictions on 11 exempt property ” as well as the secrecy of Grand Jury proceedings. He is called upon to produce not only physical and oral material within his possession or under his control, but also any such material concerning which he has knowledge or in the exercise of reasonable diligence should have knowledge.
As Judge Friendly noted in United States v. Keogh (391 F. 2d 138), the defendants’ demands on these motions should serve the valuable office of flagging the importance of evidence for the defense, and thus impose upon the prosecution a duty to make a careful check of his files. The involvement of various State departments and agencies in the Attica uprising dictates that a thorough inquiry be conducted by the Deputy Attorney-General into the records of these bodies in his search for Brady material.
Another problem arising out of the application of these plans is the timing of the disclosure. It is obvious that delaying disclosure until the eve of trial may, in some instances, render ineffective its use by the defense. The prosecution should be afforded a reasonable time to conduct its review, and to collate all material having a possible bearing on the defense of the indictments. This material should be made available to the *1049 attorneys for the defendants no later than 30 days after the entry of the order herein. The duty imposed upon the prosecutor is a continuing one, and as the trial unfolds and the issues become refined, he may be required to produce additional material which had no apparent exculpatory content in the pretrial stage. With respect to any material which the prosecution claims should not be disclosed prior to trial, the court will entertain an application for a protective order patterned upon the proceedings set forth in CPL 240.20 (subd. 5). Although the Brady obligation exists without the intervention of a court order, proper practice dictates that an order should be prepared and settled implementing the determination made herein.
rosario material
Prior to the Supreme Court’s decision in Dennis v. United States (384 U. S. 855, supra), the Court of Appeals in People v. Rosario (9 N Y 2d 286, supra) determined that defense counsel had the right to examine all prior statements of a witness who testified upon the trial of the action provided such statements relate to the subject matter of his testimony, and do not contain confidential information. Here again this principle does not relate to pretrial discovery, and the right does not accrue until after the witness has testified at the trial.
Accordingly, certain of the material demanded upon these motions, such as the Grand Jury testimony and statements of witnesses, will eventually be furnished to counsel for the defendants provided such witnesses are called at the trial. For the purpose of expediting the trial of these indictments, the Deputy Attorney-General is directed at the commencement of the trial of each indictment to furnish the Trial Judge with the Rosario material pertaining to the witnesses he proposes to call in the presentation of his case. The Trial Judge then may exercise his own discretion with respect to the time such material will be furnished to counsel for- the defendants who are on trial. (United States v. Cobb, 271 F. Supp. 159, supra.)
III. PARTICULAR AREAS OF DISCOVERY
The indictments at bar were found by a Special Grand Jury after a lengthy and intensive investigation by a Deputy Attorney-General working with a substantial full-time staff, and having the co-operation of various State agencies which had been concerned in the Attica uprising. As noted above, the crimes charged in these indictments are alleged to have taken place during the period September 9 through 13, 1971 within *1050 the confines of the Attica Correctional Facility. Although during this period the portion of the facility in which the crimes are alleged to have occurred was controlled by some 1,200 inmates, it was in effect a State enclave under the constant supervision of officers and employees of the Department of Correctional Services and the New York State Division of .State Police, thus the potential witnesses to the events that took place during this period are for the most part State employees, present inmates and former inmates of the Attica Correctional Facility. For the past year and a half the prosecutor has presumably had full access to the Correctional Facility and to the potential witnesses. The defense on the other hand has little, if any, knowledge of even the identity of these witnesses, and has had. no means of access to the place where the crimes charged are alleged to have occurred. The disparity between the resources for the preparation of the defense of these actions and the resources of the prosecution is readily apparent.
These circumstances present a strong case for extensive pretrial discovery. Nonetheless, aside from the constitutional questions which have been considered above, the court is bound to exercise its discretion within the framework of the discovery rules promulgated by the Legislature in CPL article 240. Thus, the courts of New York are not free to exercise an unlimited supervisory jurisdiction over pretrial discovery in criminal cases in the face of the legislative restrictions embodying a 11 moderate or middle of the road ’ ’ approach. Accordingly, the decisioinal law of jurisdictions such as California where the appellate courts have played a major role in charting the way toward the most liberal discovery practice, affords but slight guidance in the disposition of motions governed by the New York statute or Federal rule 16. (Traynor, Ground Lost and Found in Criminal Discovery, 39 N. Y. U. L. Rev. 228.)
The attorneys for the defendants have quite properly made far-reaching and sweeping demands for pretrial discovery in an effort to protect the rights of their clients to a fair trial in the face of these disparities. The Deputy Attorney-General subsequent to the initial argument of these motions has recognized the neeed for substantial discovery, and acceded to the defendants ’ demands for the inspection of certain of the material sought on these motions. Because of the complexity of the motions and the voluminous supporting papers and briefs that have been submitted, the court has found it necessary to deal with the subject matters of discovery on a point-by-point basis.
*1051 (a) files of the special prosecutor
The defendants have demanded inspection of all files of the special prosecutor relating to the events at Attica from September 9 through 13,1971, excluding only the thought processes contained therein. This constitutes a demand for a file search and calls for the adoption in this State of the ‘ ‘ open file system. ”. As noted above, no such sweeping discovery is constitutionally required, and CPL article 240 specifically prohibits the granting of such relief. The Federal case law shows a remarkable degree of unanimity in denying similar requests made under rule 16 of the Federal Rules of Criminal Procedure. (United States v. Cobb, 271 F. Supp. 159, supra; United States v. Crisona, 271 F. Supp. 150; United States v. King, 49 F. R. D. 51; United States v. McCarthy, 293 F. Supp. 937; United States v. Dioguardi, 332 F. Supp. 7, supra; United States v. Soyka, 265 F. Supp. 126; and United States v. Louis Carreau, Inc., 42 F. R. D. 408.)
This demand represents a far cry from the ‘1 rather moderate middle of the road approach ” adopted as a standard for pretrial criminal discovery in this State, and must be denied in its entirety.
(b) statements of the defendants
The prosecution has acknowledged that each defendant has the right to be furnished with his own Grand Jury testimony, if any, and his own written or recorded statements, in accordance with the provisions of CPL 240.20 (subd. 1, pars, [a], [b]). The term “ written or recorded” statement is construed to include statements made by a defendant, whether inculpatory or exculpatory, and whether they constitute a recital of past or contemporaneous occurrences.
The manner in which the statement has been written or recorded is immaterial, and oral statements of a defendant reflected or summarized in any report, notes or memoranda, are subject to production without regard to whether or not they are verbatim or substantially verbatim. (People v. Zacchi, 69 Misc 2d 785; United States v. Morrison, 43 F. R. D. 516; United States v. Curry, 278 F. Supp. 508.)
In the event a statement attributed to a defendant is containéd in a report or memoranda which might be deemed “ exempt property”, the remainder of the report may be excised or redacted before a copy is furnished to the defendant.
In the light of the conditions that prevailed at Attica during the period in question and thereafter, the limitation contained *1052 in CPL 240.20 (subd. 1, par. [b]), relating to statements made by a defendant to a public servant engaged in law enforcement activity, or to a person then acting under his direction or in co-operation with him, must be accorded a very broad interpretation. It shall include not only police or correctional officers, but also Deputy Sheriffs, medical personnel, monitors, members of the National Guard, and the staff of the prison.
Statements of defendants made to persons other than public servants engaged in law enforcement activity, or persons then acting under their direction, nr in co-operation with them, are not subject to production under CPL 240.20 (subd. 1, par. [b]). On the other hand, .such statements may well be material and relevant to the preparation of .the defense, and the request is reasonable. Accordingly, such statements are subject to production pursuant to the provisions of CPL 240.20 (subd. 3). To the extent that any such statements are contained or recorded in ‘ ‘ exempt property ’ ’ they may be excised. The court will entertain an application upon behalf of the prosecution for a .protective order pursuant to CPL 240.20 (subd. 5) with respect to any statement which is directed to be produced pursuant to this subdivision 3.
In summary, it is the determination of this court that the defendants are entitled to the broadest scope of discovery with respect to their own statements, since such information is an essential element to the preparation of their defense.
The discovery here ordered is, of necessity, subject to the limitation that the statement is within the possession, custody or control of the prosecutor, and is known by him to exist, or should by the exercise of due diligence on his part have become known to exist. Relating the clear intention of the statute to the circumstances and background of the investigation that gave rise to these indictments, it is appropriate to charge the prosecutor with an examination of the records of the Department of State Police, the Department of Correctional Services, and the New York State National Guard, for the purpose of obtaining records of statements made by any of the defendants to the personnel of such departments. It should be noted that statements made by a defendant which may be reflected in the records of the McKay Commission are not subject to disclosure to the extent that they were not made available to the prosecutor. (See Fischer v. Citizens Committee, 72 Misc 2d 595.)
Upon the argument of the motions, the prosecution raised a question of possible conflict of interest arising out of the cir *1053 cumstance that for the purposes of the motion some 40-odd defendants were represented by the Attica Legal Defense. Moreover, at least one of the defendants has insisted that any statements made by him be withheld from inspection by any other defendants. Since that time separate counsel have been retained or assigned for a number of the defendants, and it is to be expected that additional counsel will be appointed or retained. To obviate the possibility of a conflict of interest, the prosecution is directed to furnish any statements made by a defendant, either to the attorney who represents such defendant for the purposes of the trial, or in the event that the defendant is appearing pro se, or is not presently represented by an attorney, the statement shall be furnished to him, and not disclosed by the prosecution to other defendants or their counsel.
(c) STATEMENTS OE THE CODEEENDANTS
The motions seek discovery of all written or recorded statements made by the codefendants in each of the indictments. This material is sought primarily for the purposes of enabling the defense to determine whether a motion for a severance should be made under the principles enunciated in Bruton v. United States (391 U. S. 123).
Statements of codefendants are not encompassed within the discovery required by CPL 240.20 (subd. 1, par. [b]) and the discovery of such material must be justified by the showing required under CPL 240.20 (subd. 3). (See, also, United States v. Turner, 274 F. Supp. 412; United States v. Withers, 303 F. Supp. 641.)
The question of furnishing other defendants with copies of statements of the codefendants should be left to the determination of the defense counsel in the particular case, in view of the circumstance that at least one of the defendants has already formally objected to any such procedure. In order to conform with the standards laid down in Bruton v. United States (391 U. S. 123, supra), and to guard against any prejudice that might arise to codefendants by reason of the content of the statements of any one or more of the defendants on trial, the prosecutor is directed to furnish the Trial Judge with the statements of all of the defendants in the particular case, for his inspection in camera to determine whether or not possible grounds exist for a motion to sever. (United States v. Gardner, 308. F. Supp. 425; United States v. Dioguardi, 332 F. Supp. 7, supra.)
*1054 (d) STATEMENTS OF WITNESSES, PROSPECTIVE WITNESSES AND OTHER PERSONS
The motions at bar contain sweeping demands for discovery of statements made to the prosecutor by persons other than the defendants, including correctional officers, Deputy Sheriffs, State Troopers, clerical personnel, the Commissioner and other officers from the Department of Correctional Services, the Commanding General of the National Guard, and personnel connected with both the Attica and Auburn Correctional Facilities.
None of this material is comprehended by the first two subdivisions from CPL 240.20. Hence, the discovery sought must be warranted by CPL 240.20 (subd. 3) which vests the court with discretion to grant discovery ‘‘ with respect to any other property specifically designated by the defendant, except exempt property ’ ’, upon a showing that the property sought is material and that the request is reasonable. CPL 240.10 (subd. 3) defines exempt property as: “ 3. ‘ Exempt property ’ means (a) reports, memoranda or 'other internal documents or work papers made by district attorneys, police officers or other law enforcement agents, or by a defendant or his attorneys or agents, in connection with the investigation, prosecution or defense of a criminal action, and (b) records of statements made to such parties, attorneys or agents hy witnesses or prospective witnesses in the case.” (Italics added.)
It is, therefore, apparent that statements of witnesses and prospective witnesses are exempt property, and apart from any 'obligation upon the prosecutor arising out of the principles enunciated in Brady v. Maryland (supra) the clear and unambiguous language of the statute excludes pretrial discovery of this material. Rule 16 of the Federal Rules of Criminal Procedure contains a similar exemption from discovery with respect to the statements of Government witnesses or prospective witnesses. (Morgan v. United States, 380 F. 2d 686; United States v. Lewis, 266 F. Supp. 897; United States v. Hamilton, 452 F. 2d 472; Sendejas v. United States, 428 F. 2d 1040; United States v. Ahmad, 53 F. R. D. 186; United States v. Wolfson, 289 F. Supp. 903.)
Absent constitutional considerations relating to fair trial, the courts of New York must adhere to the legislative restrictions on the scope of pretrial criminal discovery. In People v. Inness (69 Misc 2d 429) the court adopted a liberal interpretation of the language of the exempt property definition to afford the defendant' pretrial discovery of routine standard accident investigation reports relating the physical facts sur *1055 rounding an accident. In People v. Wright (74 Misc 2d 419, 424) Mr. Justice Leff ordered the production of “ the usual police arrest reports, incident reports ” but excluded the discovery of materials which reflected the results of interviews with prospective witnesses. Neither of these cases affords any precedent for the far-ranging discovery sought in the motions at bar.
In Inness, the court pointed out that the subject matter of the material ordered produced was incapable of alteration, and in Wright, the court’s determination to make available routine police records was treated as an administrative step designed to facilitate the disposition of a large backlog of criminal cases. No reported New York decision has granted discovery of the statements of prospective witnesses in the face of the explicit language of CPL 240.10 (subd. 3).
Granting that the cases at bar are not routine criminal prosecutions, and the preparation of their defense does entail certain difficulties, this court does not conceive that the demands of a fair trial require the complete abandonment of the traditional system of criminal justice in this State. The criminal activity charged in the indictments does not involve complex factual situations characteristic of conspiracy cases and fraud cases. Over the past two centuries, countless defendants have stood trial in the courts of New York, successfully preparing their defense to criminal charges with the undoubted benefit of a foreknowledge of all the testimony to be adduced against them. The protection afforded defendants in this State more than balances the advantages which inhere in the prosecution insofar as resources and preparation for trial are concerned. To weigh this balance further on the side of the defense by requiring a complete disclosure of the prosecution’s case with its attendant risks to prospective witnesses and their testimony is not warranted by concepts of fair trial.
Insofar as the demand for statements of other persons who are neither witnesses nor prospective witnesses is concerned, the motions are denied as unreasonable and lacking a showing of materiality.
(e) names and addresses of witnesses
Disclosure of the names and addresses of prospective Government witnesses is one of the most controversial areas in the liberalization of criminal pretrial discovery. The advantage of this information to the defense in the preparation for trial, and the danger to the prosecution’s case are equally apparent. *1056 The dilemma posed by such disclosure is aptly illustrated by the circumstances surrounding these cases. On the one hand potential witnesses to the crimes charged are not readily identifiable. Tet, once their identity is revealed, prospective witnesses who are present or former inmates of the correctional facility will almost certainly be subject to reprisals and pressures which could seriously impair the integrity and the content of their testimony.
A substantial number of jurisdictions, including California, require by statute or rule that the defendant be advised, prior to trial of the action, of the names and addresses of the witnesses the prosecution intends to call. Section 271 of the Code of Criminal Procedure formerly required that the names of the witnesses examined before the Grand Jury be indorsed upon the indictment. In his message to the Legislature in January of 1936, the Governor spoke of the reluctance of witnesses to appear before Grand Juries and at trials, and recommended a modification of procedures so that witnesses who assist forces of law enforcement would be reasonably protected. In chapter 22 of the Laws of 1936, the Legislature repealed section 271 of the Code of Criminal Procedure. Since that time at least one trial court has ordered the disclosure of the names of witnesses as a common-law right, while other courts at the trial level have denied similar relief. (See People v. Nationwide News Serv., 172 Misc. 752. Compare People v. Ricci, 59 Misc 2d 259; People v. Steinberg, 60 Misc 2d 1041.) In People v. Lynch (23 N Y 2d 262, 271-272), the Court of Appeals noted that there was disagreement as to whether or not pretrial release of names of potential witnesses was permissible, but the court concluded that if indeed such discovery may be had, it was a matter that rested in the discretion of the trial court.
Although CPL 240.10 (subd. 3) and Federal rule 16 exempt from pretrial discovery statements of prospective witnesses, they do not specifically preclude the disclosure of their names and addresses. In People v. Hvizd (70 Misc 2d 654), the court held that the names and addresses of witnesses were not subject to pretrial discovery under article 240 while in People v. Barnes (74 Misc 2d 743, 745), the court granted such an application but provided that reargument of its order might be had in the event 1 ‘ the People feel that there are compelling circumstances indicating that potential witnesses may be tampered with or threatened, or there are other compelling circumstances why the prosecution should not disclose the names of potential witnesses”.
*1057 The Federal courts have almost uniformly denied the pretrial discovery of the identity of prosecution witnesses. (United States v. Chase, 372 F. 2d 453, cert. den. 387 U. S. 907; United States v. Persico, 425 F. 2d 1375; United States v. Margeson, 261 F. Supp. 628; United States v. Tanner, 279 F. Supp. 457; United States v. Burgio, 279 F. Supp. 843; United States v. Westmoreland, 41 F. R. D. 419; United States v. Birrell, 276 F. Supp. 798; United States v. Cobb, 271 F. Supp. 159, supra; cf. United States v. Hughes, 429 F. 2d 1293; United States v. Ahmad, 53 F. R. D. 186, supra.)
The proposed amendments to Federal rule 16 provide that the court may order the Government to furnish to the defendant a written list of the names and addresses of all Government witnesses. The rule is, however, made subject to the qualification that this material shall not be subject to disclosure if the attorney for the Government certifies that to do so may subject the witness or others to physical or substantial harm or coercion. The rule also provides a procedure whereby the Government may perpetuate the testimony of any witness in a hearing before the court, and that the record of the witness’ testimony shall be admissible at the trial in the event the witness has become unavailable or has changed his testimony.
The court concludes that the discovery of witnesses ’ names and addresses rests within the discretion of the trial court. In the absence of the type of safeguards provided in the proposed amendment to Federal rule 16, the court exercises its discretion to deny the motions to compel the discovery of the names and addresses of the prospective Government witnesses., These indictments have been the subject of widespread interest. The defendants have a substantial number of supporters whose activities are not subject to the control of the defense counsel or the defendants themselves. In addition, as noted above, it is highly likely that the prospective Government witnesses will include present and former inmates as well as correction officers who are currently employed at the Attica Correctional Facility. Under the circumstances, the risks inherent in disclosing the identity of these witnesses before trial far outweigh the advantage to be gained by the defense in the preparation of their case. In any event, under the practice that presently prevails in this court, the names of the prospective witnesses will be revealed at the time of jury selection upon the opening of the trials.
The prosecution is directed to furnish the attorneys for the defendants with the following information:
*1058 (a) Names .and last known addresses of persons confined at Attica during the period between September 9 through 13,1971, together with the designation of the area where they were housed.
(b) The names and last known addresses of persons who were in “ D” yard during the same period.
(c) The names and last known addresses of the following persons:
(1) All employees of the Department of Correctional Services who came to Attica during the period in question.
(2) All other State employees who came to Attica during said period, including members of the Division of New York State Police.
(3) Persons who were held as hostages during the period in question.
(4) Physicians, nurses, nurses’ aides, or other medical or paramedical personnel who attended or examined any person connected with the incidents of September 9 through 13, 1971.
The prosecution is further directed to furnish the defendants with the official schedules or assignment of guards at the Attica Correctional Facility during the period in question, and the tour-of-duty sheets of such guards.
The defendants’ request for a one-hour interview with all of the prisoners who were inmates at Attica during the time, of the uprising and for access to all officials, guards, sheriffs, troopers, et al., is unreasonable on its face, and is denied. Interviews with particular inmates may be had with the consent of the inmate in accordance with the rules and regulations of the correctional facility. Interviews with officials, guards, Deputy Sheriffs, State Troopers, and other State personnel may be arranged by the attorneys for the defendants with the consent of the particular official whom they seek to interview.
The prosecutor is directed to obtain from the- Department of Correctional Services any photographs it has in its possession of the hostages and inmates who were identified as being in ‘ ‘ D ” yard during the period in question, and to make arrangements for the defendants and their counsel to inspect such photographs.
(f) grand jury testimony
The defendants demand to inspect not only the transcript of the Grand Jury testimony and exhibits, but also the records of its deliberations. This motion is made solely for the purpose of pretrial discovery, and the defendants specifically reserve the right to make further motions to inspect the Grand Jury pro *1059 ceedings for other purposes including presumably the sufficiency of the evidence to support the indictments.
CPL 240.20 (subd. 1) directs that a defendant be furnished with a record of his testimony before the Grand Jury, but does not extend to the testimony of any other witness. The rationale of preserving the secrecy of Grand Jury proceedings obviously does not apply to a defendant’s own statements (Proposed Amendments to Rule 16 of the Federal Rules of Criminal Procedure — Advisory Committee Notes, 48 F. R. D. 553, 595, 600).
The motion is made pursuant to CPL 240.20 (subd. 3) which, standing alone, might be deemed to warrant such relief upon a showing of materiality and reasonableness. In this ¡State, however, inspection of Grand Jury minutes has been codified in 210.30 (subd. 2) and the court’s power to grant such relief before trial and absent Brady considerations, is limited to motions directed at the legal sufficiency of the indictment.
In Matter of Proskin v. County Ct. of Albany County (30 N Y 2d 15), the lower court had granted an inspection of Grand Jury minutes on the ground that it was necessary “ to provide the information for the preparation of his [defendant’s] defense.” The Court of Appeals in granting a pre-emptorv writ of prohibition squarely held that the court lacked the power to grant such an inspection for the purposes of pretrial discovery (PP 19, 21).
‘ ‘ The cloak of secrecy accorded Grand Jury proceedings for the protection of the public, witnesses, potential defendants, and others may not be lifted for purposes of general unilateral discovery before a criminal trial (People v. Howell, 3 N Y 2d 672, 675; People ex rel. Lemon v. Supreme Ct., supra [245 N. Y. 24], at p. 31; Matter of Montgomery, 126 App. Div. 72, 82; Ann., Inspection — State Grand Jury Minutes, 20 ALR 3d 7, 59). Absent reason to believe that the evidence before the Grand Jury is insufficient or illegal, the court lacks authority because it lacks grounds to permit inspection * * *
“ The nub of the matter is that the inspection of Grand Jury minutes in advance of trial is available only to attack the indictment, and may not be allowed to assist the litigant in the trial which may ensue.”
It is idle for the defense to attempt to distinguish Proskin on the ground that the defendant had there moved for an inspection to test the sufficiency of the indictment. The lower court’s determination was based on discovery considerations, and the review in the Court of Appeals was addressed to the exercise *1060 of power for this purpose. Moreover, the circumstances that the case was decided by a divided court does not detract from its vitality as a precedent because the dissenting opinions are in a large part concerned with the extension of the extraordinary remedy of prohibition, and do not contend that the Grand Jury proceedings are an appropriate subject of pretrial discovery.
The prospect that portions of the Grand Jury testimony will undoubtedly be máde available to the defense upon the trial of the action, in conformance with the principles laid down in People v. Rosario (9 N Y 2d 286, supra) and Dennis v. United States (384 U. S. 855, supra), and the additional possibility that the testimony of Grand Jury witnesses may be produced as Brady material, do not affect the established policy in this State against permitting an inspection of Grand Jury minutes for general discovery purposes because in such instances constitutional requirements with respect to the content of a fair trial must prevail.
Although the Federal cases respecting the pretrial disclosure of Grand Jury testimony are in conflict (see United States v. Hughes, 429 F. 2d 1293, supra; United States v. Evanchik, 413 F. 2d 950, supra), no court has held that such an inspection is an essential prerequisite to a fair “trial. Moreover, it is significant that the proposed amendment to Federal rule 16 incorporates the established policy of this State, and confines inspection of Grand Jury testimony to motions for the dismissal of an indictment on the ground of insufficiency.
(g) PBISOU" EECOEDS
The defense seeks to inspect a wide variety of records maintained by the Department of Correctional Services and the Parole Board. The Deputy Attorney-General does not oppose the discovery of any such material to the extent that it is within his possession. On the other hand, it is perfectly apparent that much of the material sought in this phase of the motion, is not within the possession of the prosecutor, and must of necessity he obtained from the appropriate State agency.
The inspection of this material is sought under CPL 240.20 (subd. 3), which requires a showing upon the part of the defense that the discovery is material, and that the request is reasonable.
The prosecutor is directed to furnish each of the individual defendants with the records of his arrests and convictions maintained by the State of New York and the Federal Bureau of Investigation. In addition, the prosecutor will furnish the Trial *1061 Judge at the commencement of the trial, with the records of arrests and convictions of the witnesses proposed to be called upon the trial of the action, and the Trial Judge will exercise his discretion with respect to the time when such records will be delivered to counsel for the defendants.
The request to inspect the permanent “ jacket ” or parole files of all of the prisoner witnesses who were at Attica, and who testified before the Grand Jury in this proceeding, is denied on the ground that it is not material to the preparation of the defense, and the demand is unreasonable.
Similarly, the demand for the employment records of all guards at Attica during the period in question, including psychiatric tests and copies of disciplinary hearings, is denied as immaterial and unreasonable.
Subsequent to the argument of these motions, counsel for various of the defendants have sought to obtain the right to inspect the records of various State departments and institutions, and subpoenas duces tecum have been issued or submitted to the court, calling for the production of such material at a time when no hearing or trial date has been set herein. This is not an appropriate pretrial procedure, and applications for pretrial discovery are directed to be made to this court on appropriate papers and on notice.
With respect to the demands which have been made at bar -for the discovery of prison records, the Deputy Attorney-General is directed to make arrangements for the inspection of the following documents maintained by the Department of Correctional Services:
(a) Records and logs pertaining to the Attica uprising kept at the Attica Correctional Facility during the period of September 9 through 13, 1971;
(b) The correspondence between the Commissioner of Correctional Services’ office, and the prisoners and administrators of the Attica Correctional Facility during the period from September 9 through 13, 1971;
(c) The manual of procedures for correctional officers at the Attica Correctional Facility, including all directives, regulations, policies and schedules relating thereto, and which were in effect during the period of September 9 through 13, 1971;
(d) Minutes, notes, memoranda or notations of any kind reduced to writing by members of the staff of the Department of Correctional Services relating to any and all actions taken by such department with respect to any individual defendant during the period of his confinement at Attica Correctional *1062 Facility up to the time of the offense charged against such defendant in the indictments herein. Said material with respect to each individual defendant will be made available only to the defendant and his trial counsel.
(e) The complete personnel or inmate files pertaining to each of the defendants, maintained by the Department of Correctional Services, or the Attica Correctional Facility. The aforesaid material will be made available only to the individual defendant and his trial attorney.
The demand for the inspection of Parole Board records is denied upon the ground that there is no showing that such records have any materiality in the preparation of the defense. These records are confidential, and the Deputy Attorney-General ■states that he has not been provided with statements given the Parole Board by persons having any information concerning the events at Attica during the period in question.
The request for the computer data cards on all prisoners at Attica Correctional Facility during the period in question is denied as unreasonable and immaterial.
(h) tests, experiments and analyses
Pursuant to CPL 240.20 (subd. 2), discovery is ordered with respect to all results or reports of physical examinations, scientific tests, experiments, photographs, tapes, films, made of persons or on weapons and other objects found in the Attica Correctional Facility during and subsequent to the uprising which took place during the period of September 9 through 13, 1971, which are in the possession or under the control of the Deputy Attorney-General, including:
(a) Blueprints, measurements, physical and scientific tests made of “D ’’.yard, and other alleged crime locations;
(b) Analyses of inmate-fashioned weapons;
(c) Reports of handwriting analyses;
(d) Voice prints;
(e) Expert or scientific tests conducted on the locations throughout the prison;
(f) Blood tests;
(g) Fingerprint analyses;
(h) Medical reports of injuries to hostages;
(i) Medical reports of injuries to inmates;
(j) Autopsy and medical reports with respect to William Quinn are directed to be furnished to the attorneys for the defendants, John Hill and Charles Pernasalice.
*1063 (k) Autopsy and medical reports with respect to Michael Privitera are directed to be furnished to the attorney for the defendant, Mariano Gonzalez.
(l) Autopsy reports of hostages killed in the retaking- of Attica, who are referred to in the various indictments as being the victims of certain specified criminal activity affecting their physical well-being.
The reports of ballistics experts with respect to the discharge of firearms during the course of the retaking of the Attica Correctional Facility are denied as immaterial, since they relate to events which took place subsequent to the occurrence of the crimes charged in the indictments.
(i) TANGIBLE OBJECTS
The motions at bar seek discovery of certain tangible objects specified in the motion papers, on the ground that such objects are material to the preparation of the defense, and that the request therefor is reasonable.
Discovery is granted with respect to the notes passed between Eussell G. Oswald, Leon J. Vincent and prisoners in “ D ” yard, as well as notes received from hostages, and notes from correction officers and State Troopers who acted as identifying observers.
Discovery is denied with respect to the communications between correction officers and the Governor and his staff, and also denied as to drafts of the book “Attica, My Story ’ ’ by Eussell G. Oswald, on the ground that these materials are not relevant, nor is the demand therefor reasonable.
Discovery is granted with respect to all photographs, movies, video tapes which were taken at the scene of the uprising during the period between September 9 through 13, 1971, and which are in the possession, custody or control of the prosecutor. Arrangements will be made by the Deputy Attorney-General and the attorneys for the defendants for the screening of such material, and the duplication of reasonable portions of such material as may be necessary for the defense of these actions.
With respect to the photographic essay by Mr. Cornell Capa, inspection is granted as to any parts of said material which relate to the events of September 9 through 13, 1971, and which are in the possession, custody and control of the District Attorney.
Discovery is denied with respect to the tape recordings, press releases, diary entries and National Guard records referred to in paragraph designated VII4, 5, 6 and 7 of the omnibus motion. *1064 Discovery and inspection is granted of any and all weapons which the State intends to introduce into evidence against any of the defendants, or which were recovered from the Attica Correctional Facility, including but not limited to any article of the nature designated in VII 8 (a-s) of the omnibus motion.
The request for inspection of the letter of the District Attorney of Wyoming County requesting to be superseded by the office of the Attorney-General, is denied as immaterial.
Discovery is granted of written reports respecting any physical examinations made of the hands, body and blood of any of the defendants. Such reports will be furnished only to the attorney for the defendant who is the subject of any such report.
Inspection is also granted each defendant of any material seized from his person or himself which is charged to be contraband in any of the above-named indictments.
(j) OTHER MATERIAL
The inspection sought of the items designated in VII 1-4 of the omnibus motion is denied on the ground that the material sought therein has no relevance to the preparation of the defense, except for such items comprehended by VIII, 4 as may be deemed to constitute Brady or Rosario material.
(k) ACCESS TO ATTICA
In a supplemental motion, filed subsequent to the argument of the omnibus motion, the defendants move, among other things, for an order granting leave to visit, inspect, photograph and diagram all areas of the Attica Correctional Facility alleged to be the scene of any criminal acts charged in the indictments. The motion seeks an inspection of the premises by all of the many defendants, and it is perfectly apparent that the granting of such relief would disrupt the orderly operation of the facility. The defendants have failed to make any showing that such an inspection is necessary for the preparation of their defense, particularly in the light of the circumstances that there will be available to them photographs, diagrams and blueprints of “D” yard. In addition, the prosecutor is directed to furnish each individual defendant or his attorney with a photograph of the scene of any criminal acts charged against him, in the event such scene is not contained in the photographs and diagrams which the prosecutor has been directed to produce. Accordingly, the inspection sought in paragraph IX of the supplement to the pmnibus motion is denied.
*1065 (l) selective enforcement
The supplementary motion seeks a sweeping discovery to prepare for an evidentiary hearing on selective enforcement. No such hearing has been ordered, and no showing has been made in the moving papers warranting any such proceeding. The Grand Jury which returned the indictments at bar is still in session, and this court must assume that in all instances where there is evidence before the Grand Jury of criminal activity upon the -part of any person connected with the uprising at Attica, appropriate indictments will be returned.
(m) identification
The supplemental motion also seeks evidentiary matter with respect to tainted identification and electronic eavesdropping or wiretapping. Such material must be obtained in the course of a suppression hearing upon an appropriate showing in accordance with CPL article 710.
(n) informers
In a second supplemental motion filed September 12, 1973, the defense seeks to learn whether any of the indicted defendants have been or are working for the State of New York on a paid or volunteer basis as an informer and, in addition, whether any of the 59 persons listed in an attached exhibit, who have participated in the preparation of the defendants’ cases, have or are serving in a similar role. The attched list of persons is headed by the name of the attorney who has signed all of the discovery motions, including this second supplemental motion on behalf of some 43 of the defendants.
The identity of informers is traditionally protected from pretrial discovery for valid considerations of public policy. Any prejudice that might arise upon a joint trial involving a defendant who has acted as an informer will be avoided by the m camera inspection by the Trial Judge of the statements of all codefendants which has already been directed herein. Accordingly, the motion is denied as to' the defendants named in these indictments.
The bizarre aspect of the second phase of the supplementary motion underscores the confusion and lack of order that has ensued from permitting, for practical purposes, a large group of defendants to be represented, at least on these pretrial motions, by the Attica Legal Defense. This court has never been advised of the nature of such organization, or the identity, qualifications or competence of the persons who comprise it. *1066 Presumably, it is made up of persons who volunteered their services to assist in the preparation of the cases of the defendants who have been indicted in the course of the Attica Grand Jury investigation.
No showing is made in support of this motion that the defendants have the slightest ground to suspect that any membér of this amorphous organization has acted as an informer, nor do the moving papers make any attempt to inform the court that the 59 persons listed in Exhibit C have in fact, worked in connection with the preparation of the defense of these indictments. Consequently, on these grounds alone the motion should be dismissed out of hand.
The court would, however, make clear that the veil of secrecy surrounding the identity of informers has no application to persons who intrude into the counsels of a defendant in the preparation of his case. Therefore, the Deputy Attorney-General is directed to advise the defendants whether or not any person who, to his knowledge, has worked for and/or participated in the preparation of the defense of these cases, has been or still is, to the prosecutor’s knowledge, working for the State of New York on a paid or volunteer basis as an informer. In all other respects the supplemental motion is denied.
CONCLUSION
Pretrial discovery in criminal cases is a relatively new development in this jurisdiction. The longer experience with liberal disclosure practices in civil litigation has demonstrated that it is an effective procedural tool both for expediting the disposition of litigation, and simplifying the trial of cases. The partisan posture of withholding from an adversary all knowledge of the proof to be adduced in support of a claim has been forced to yield in the light of the-well-founded experience that evidence which will not withstand pretrial scrutiny by the opposition is seldom of great probative value to the trier of the fact. The efficacy of broadened discovery on the civil side is attributable to the growing* practice of the trial bar in which opposing counsel work out among themselves the problems arising in this area without constantly seeking* the intervention of the court.
Granting that pretrial discovery in criminal cases is, to a large degree, one-sided by reason of the defendant’s constitutional rights, and that under certan circumstances there are dangers inherent in the pretrial disclosure of the prosecution’s case, nonetheless, there remain extensive areas wherein practical problems respecting discovery procedures can best be resolved *1067 by conferences between the prosecution and the attorneys for the defendants. Accordingly, counsel are urged to set up such conferences for the purpose of formulating procedures to carry out the provisions of the orders to be entered hereon. Thereafter, this court will schedule a pretrial discovery conference to determine the questions which remain in dispute between the parties concerning any of the matters dealt with in this memorandum opinion.
This disposition of the discovery motions has been made upon the basis of a broad view of possible materiality to the preparation of the defense. This court has not considered the question of the admissibility of any of such material in evidence, and all such evidentiary questions are, of course, reserved for determination of the trial court.

 Not printed.