**DACAJAWEIH, indicted as John Hill, et al., Plaintiffs,**

v.

**Louis LEFKOWITZ, Individually and in his capacity as Attorney General of the State of New York, et al., Defendants.**

**Civ. No. 74–483.**

United States District Court,
W. D. New York.

Nov. 13, 1974.

Dennis Cunningham, Attica Brothers Legal Defense, Buffalo, N. Y., for plaintiffs.

Charles A. Bradley, Sp. Asst. Atty. Gen. of N. Y., Buffalo, N. Y., for defendants.

CURTIN, Chief Judge.

Plaintiffs are all under indictment in the New York State courts for crimes allegedly committed during the tragic upheaval which engulfed the Attica Correctional Facility in September of 1971. Trials under these indictments are imminent. Plaintiffs have requested that this court exercise its equitable jurisdiction under the Civil Rights Act (42 U.S.C. § 1983 et seq.) and impose a novel restriction upon the State's Special Prosecutor, namely, impoundment and inventory of the vast files amassed by the State during its investigation.

This action was commenced by an order to show cause, which was signed on October 10, 1974, returnable on October 16, 1974. The defendants cross-filed a motion to dismiss the complaint, also returnable on October 16, 1974. On the date of the return, the court heard oral argument on the complaint and the defendants' motion. All parties agreed that the taking of testimony would be of little value in resolving

the legal issues in dispute. Decision was reserved until such time as the parties submitted legal memoranda. That process is now completed and a decision is appropriate.

The plaintiffs allege that materials which normally would be turned over to defendants under the holdings of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), and People v. Rosario, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), are being systematically or negligently destroyed or lost by the Special Prosecutor. The plaintiffs contend that the apparent loss of this vital material irreparably damages their constitutional right to adequately prepare a defense. The relief they seek is designed to prevent future loss of this important material now in the State's control.

To support the allegations, plaintiffs have submitted copies of exhibits and transcripts from the only "Attica" trial held thus far—People of the State of New York v. Willie Smith (Indictment No. 27/1972).[1] These submissions indicate the possible existence of statements taken by state investigators from witnesses who subsequently testified at Smith's trial. There are also indications that photographs that may have been shown to prosecution witnesses are no longer available. In addition, it is clear that the Special Prosecutor made use, at Attica, of a mechanical shredding device to destroy raw notes of investigators after some of the "pertinent" information was transferred to file cards and interview slips.[2] Furthermore, a mechanical shredder is currently being used by the prosecution in the County Courthouse office it will occupy for the duration of the upcoming trials.

The plaintiffs contend that this showing demands the extraordinary relief they request.

The basis for defendants' motion to dismiss is that to grant the relief would be an unwarranted interference by this court with pending state criminal cases, especially when adequate remedies are clearly available in the state courts.

The nature of the relief requested calls to mind the oft-quoted language of Chief Justice Stone in Douglas v. Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), reflecting the notions of federalism and comity which govern this court's jurisdiction:

> Congress, by its legislation, has adopted the policy, with certain well defined statutory exceptions, of leaving generally to the state courts the trial of criminal cases arising under state laws, subject to review by this Court of any federal questions involved. Hence, courts of equity in the exercise of their discretionary powers should conform to this policy by refusing to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent; and equitable remedies infringing this independence of the states—though they might otherwise be given—should be withheld if sought on slight or inconsequential grounds. (Citations omitted.)

319 U.S. 157, at 163, 63 S.Ct. 877, at 881.

The reliance by subsequent courts on this proposition is evident in the series of cases decided with Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and in the later cases cited by plaintiffs in their memorandum,

1. Smith is not one of the plaintiffs in the instant action. His trial ended on October 9, 1974 when his motion to dismiss was granted at the completion of the State's case. The State has appealed the dismissal.

2. This practice was employed during the initial investigation conducted in the period immediately following the retaking of the Attica Correctional Facility on September 13, 1971. The slips and cards were turned over to the defense at the trial of Willie Smith.

Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), and Allee v. Medrano, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974).

The plaintiffs are correct when they argue that Younger v. Harris, *supra,* did not foreclose equitable interference by a federal court with pending state prosecutions. But *Younger, supra,* and the cases that preceded it, also laid down rigid requirements for the exercise of that form of jurisdiction by a federal court.

> . . . in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is "both great and immediate." (Citation omitted.) Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered "irreparable" in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution.

401 U.S. 37, at 46, 91 S.Ct. 746, at 751. With regard to the first test, the record before us is devoid of any evidence of irreparable harm to these plaintiffs or, for that matter, of any harm. All of the exhibits submitted to this court relate to the trial of Willie Smith, which ended in a dismissal of all charges. We can only speculate about what, if anything, of value to the plaintiffs has been lost, shredded, or otherwise destroyed.

But more importantly, we think the record discloses that the state courts are offering the plaintiffs an opportunity to vindicate the rights they allege are being violated. In People v. Bennett, 75 Misc.2d 1040, 349 N.Y.S.2d 506 (1973), decided more than a year ago, the omnibus motions for pretrial discovery in the plaintiffs' criminal trials were decided. Precise guidelines for the identification and preservation of the material now sought to be impounded were imposed upon the prosecution.

Of paramount significance, however, is the action of State Supreme Court Justice Bayger in the recently concluded trial of Willie Smith. When the allegations of destruction and loss of materials were raised, the trial was recessed and an immediate hearing was held outside the presence of the jury. After considering the evidence and testimony presented at the hearing, Justice Bayger determined that the allegations had not been supported.[3]

This court is persuaded that if Smith had been convicted, any review by this court, prior to the exhaustion of the state appellate process, would be premature. 28 U.S.C. § 2254(b). Yet, based upon substantially the same evidence rejected by Justice Bayger, the plaintiffs request extraordinary equitable relief that is bound to interfere with and embarrass the state's cases against them. Justice Frankfurter, writing for the United States Supreme Court, put the problem this court now faces in focus when he wrote:

> If we were to sanction this intervention, we would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range—would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. Asserted unconstitutionality in the impaneling and selection of the grand and petit juries, in the failure to appoint counsel, in the admission of a confession, in the creation of an unfair trial atmosphere, in the misconduct of the trial court—all would provide ready opportunities, which conscientious counsel might be bound to employ, to subvert the order-

---

3. This court makes no judgment at this time regarding the propriety of the procedures employed or the findings made by Justice Bayger.

ly, effective prosecution of local crime in local courts. To suggest these difficulties is to recognize their solution.

Stefanelli v. Minard, 342 U.S. 117 at 123–124, 72 S.Ct. 118, 122, 96 L.Ed. 138 (1951).

Therefore, it is the court's judgment that the defendants' motion to dismiss the complaint be granted.

So ordered.