OPINION OF THE COURT
Fuchsberg, J.
One afternoon at about 4:00 p.m., a cleaning woman alone in an empty classroom in the school where she was employed was accosted and raped by two teenagers. She immediately reported the crime and was taken to the hospital, but that day was unable to do more to identify her attackers than pick out "look-alike” photographs from an array exhibited to her by the police. However, one day about four months later, upon seeing the defendant Andre W. in the school building, she *183 advised others then present that he was one of her assailants. This led to his arrest and subsequent adjudication as a youthful offender after a jury found him guilty of attempted robbery in the second degree and of possession of a weapon as a misdemeanor. The Appellate Division affirmed.
On this appeal, defendant contends that he was deprived of his constitutional right to a fair trial, essentially on two grounds. One is the trial court’s refusal to order disclosure of the identity of a particular witness. The other is the alleged prejudical nature of the prosecutor’s closing argument. For reasons which follow, we believe the matter should be remitted to the trial court for further proceedings in accordance with this opinion.
The trial here revolved about the issue of identification. Not surprisingly, in view of the nature and circumstances of its commission, the crime’s only witness was the victim herself. At the identification hearing, however, her testimony was so "vague and confused” that the Trial Judge commented that he would "not allow a guilty verdict to stand on the basis of this woman’s testimony”. Proof from others able to put the defendant close to the scene at the time the crime occurred therefore loomed important. Four people took the stand for that purpose.
The testimony of three of these was of limited value. Each, a school staff member, had observed Andre in the building somewhat earlier in the afternoon in question. But cross-examination elicited that Andre’s mere presence in the school was not remarkable; at that time on most days he would be there at 2:00 p.m. to pick up his younger brother and then would return somewhere between 3:00 and 4:00 p.m. to participate in an after-school activities program.
The fourth witness, a nine-year-old pupil whom we will identify by her given name Jackie, had more pointed things to say. She related how she saw the defendant and another boy with the cleaning woman at about the time of the crime in the vicinity of the very classroom in which the attack took place, and that she remembered the occasion because she and another girl who was then with her had run away when Andre had told them to "go in the staircase” and the other boy had tried to grab them. It developed that she had never reported the incident, not even when she saw defendant in the school later on; it was not until almost a year and a half later, when she was 11 and the case was about to be tried, that the *184 girls were unearthed as witnesses and interviewed by the police for the first time.
The People never called Jackie’s companion and they refused either to produce her or supply her identity. Defendant’s counsel, arguing that this refusal constituted suppression of potentially exculpatory evidence, then moved for a mistrial. The court, on the basis of the prosecutor’s statement that the witness had exhibited an "inability to identify the defendant” when a detective had shown her an array of photographs which included one of the defendant, decided her testimony would not be exculpatory. It thereupon denied the application. The Assistant District Attorney’s remark had been made in the course of the colloquy in which he argued the motion for disclosure. Counsel also sought to obtain more detailed information concerning the contents of the conversation between the detective and the witness, specifically requesting "what she said”. This too was denied. Neither the second girl’s identity nor what she said to the police was ever disclosed.
Generally, since at least the advent of compulsory process (US Const, 6th Arndt; Washington v Texas 388 US 14, 19), it has been recognized that a prosecutor has broad discretion in the preparation and presentation of his cases (People v Fein, 18 NY2d 162, 172, app dsmd 385 US 649). Unlike the far less adversarial practice that prevailed under the old common law, when an accused had no right to call witnesses in his own behalf (8 Wigmore, Evidence, § 2190, p 67; 2 Wigmore, Evidence, § 575, p 685) and it was the State that was obligated to call and examine all persons with knowledge of the material facts (Keller v State, 123 Ind 110), a prosecutor need not put on any witness, even an eyewitness, whose testimony his own investigation convinces him would be unreliable, cumulative or irrelevant (People v Buckler, 39 NY2d 895, 897; People v Stridiron, 33 NY2d 287, 292).
 Yet the prosecutor’s freedom in that regard is not absolute. He must disclose information favorable to an accused and material to guilt or punishment (Brady v Maryland, 373 US 83, 87). So, where a request is made and there is "some basis” for believing that the prosecutor may be in possession of potentially exculpatory material, "deference to the prosecutor’s discretion must give way, and the duty to determine the merits of the request for disclosure then devolves on the trial court” (People v Consolazio, 40 NY2d 446, 453, cert den 433 US 914; see, also, People v Testa, 40 NY2d *185 1018, affg 48 AD2d 691, 692; People v Bottom, 76 Misc 2d 525 [Roberts, J.]). Put another way, "When there is substantial room for doubt, the prosecutor is not to decide for the court what is admissible or for the defense what is useful” (Griffin v United States, 183 F2d 990, 993).
It goes without saying that "some basis” is not a term capable of precise definition. In the context in which it is used here, it certainly contemplates more than purely subjective assertion of a defendant’s desire for information. On the other hand, a defendant is not required to demonstrate, in advance of the holding of the inquiry he seeks, that that inquiry will in fact necessarily result in a finding of materiality. Between these extremes, in most instances, disclosure rests within the compass of the Trial Judge’s sound discretion, exercised in the perspective of the issues in the particular case, the nature of the other proof known to him and other relevant circumstances, including the risk of reprisal, if any, against the witness whose identity is revealed. Beyond that, except to the extent that we do so by our decision in cases such as the present one, the quest for what Brandéis called "the true rule” must await the step-by-step and case-by-case evolution characteristic of the common law.
Thus, when confronted with an application of this type, a perfunctory inquiry generally will not do. Among other reasons, a reviewing court will not, without the benefit of a meaningful record, be in a position to know what effect the evidence would have had if it were disclosed (People v Bottom, 76 Misc 2d 525, 530, supra).
Perforce, once the Trial Judge has made sufficient inquiry, he must be allowed great leeway (see Louisell, Criminal Discovery: Dilemma Real or Apparent, 49 Cal L Rev 56, 99-101). In some cases, a statement by the prosecutor that the evidence is inculpatory (i.e., that this witness and several others have identified the defendant) may end the inquiry and lead to a denial of disclosure; in others, it may suffice for the Judge to interview the witness privately in chambers; in still others, a formal hearing, with counsel present, is required (see, e.g., Xydas v United States, 445 F2d 660, cert den 404 US 826; Pollard v United States, 441 F2d 566, 568; Levin v Katzenbach, 363 F2d 287).
In choosing his course, a Judge should be conscious that courts are not impotent to protect witnesses. For instance, fictitious names may be employed during the hearing (cf. *186 People v Stanard, 42 NY2d 74, 84) and, if disclosure be ultimately directed, it can be delayed until the eve of trial (People v Lopez, 60 Cal 2d 223, 247, cert den 375 US 994). And it goes without saying that a court, in support of the protection it chooses to apply, has a right to call for the full cooperation of counsel as officers of the court.
The availability of a legal arsenal of protections is significant since the right of a defendant to discover a potentially material witness must be balanced against a founded fear that such discovery might lead to intimidation of the witness or the influencing of his testimony. Yet, with proper safeguards, if the evidence is of material importance to the defense on the question of guilt or innocence it should be disclosed* (cf. People v Goggins, 34 NY2d 163, cert den 419 US 1012).
Returning to the present case, here there was "some basis” for further inquiry. The District Attorney’s statement characterizing the detective’s exhibition of the photographic array to the nondisclosed witness was both hearsay and conclusory in form. It could have been of but little assistance to the court. Its acceptance had the effect of yielding to the prosecution the court’s responsibility to determine the import of the requested material.
The District Attorney’s statement to the court said no more than that the pictures she had viewed in the array were not those of either of the boys she had seen on the afternoon of the crime; at no time was it suggested that the witness was or was not able to describe and remember what the youths looked like and by that description appreciably eliminate or further implicate Andre as one of the perpetrators (cf. Grant v Alldredge, 498 F2d 376; Matter of Kapatos, 208 F Supp 883). Notedly, it was not stated that the second girl had claimed a lack of recollection of initial observation. While the failure to identify could stem from a number of other unprobed possible causes, the circumstances of the initial viewing, as described *187 by Jackie, make it unlikely that the opportunity and reason to notice the appearance of the youths was any greater in the case of one girl than the other.
Moreover, Jackie’s testimony was crucial in the framework of a case that otherwise was established only by the victim’s woefully weak identification testimony and its far from conclusive bolstering by the three people who had seen Andre at the school that afternoon. Guilt or innocence in this case hinged on identification and it was on her testimony on this issue that the People placed their main reliance. Whether the second girl’s version corroborated or negated Jackie’s story could make all the difference in the world. (Cf. United States v Agurs, 427 US 97, 112-113; United States ex rel. Meers v Wilkins, 326 F2d 135.)
The second girl’s testimony could also be vital because Jackie, though her testimony went to the heart of the issue, was not an invulnerable witness. The record reveals that she was unusually vague on dates, not an inconsequential factor in identification testimony. This shortfall was compounded by the long interval that had elapsed between the date of the crime and that of her initial interview. Also, while the Judge and jury could gain an impression of Jackie’s personal qualities — her intelligence, her imagination, her potential for making observations under stress, her ability to recollect these observations and her capacity to communicate them — her credibility could be illuminated by juxtaposition with the capacities of the other child of the same age who, seeing things from the same vantage point, ended up remembering and describing them differently. Thus, even if Jackie’s version was not directly negated by the second girl, the latter’s testimony still would not be cumulative.
Finally, save for an objectionable prosecutorial comment for which there was no support in the evidence, there is nothing to indicate that there would have been any danger to the witness had her identity been disclosed. The Assistant District Attorney pressed no such consideration upon the court during his successful argument for denial of disclosure. On this appeal, aside from its argument on materiality, the People confine themselves to the general observation that an 11-year-old child is best not exposed to the pressures of a public trial. In any event, fuller preliminary inquiry, at which any reasonable concern for the safety of one of her tender years could have been explored, would have created a better basis for the *188 determination of what precautions, if any, were called for incident to a hearing in this case.
We conclude therefore that there should have been a hearing on the materiality of the undisclosed witness. It is for that purpose that the case is remitted to the Supreme Court, New York County.
Additionally, some observations on the summation issue are in order. In closing argument, the prosecutor, without any basis in the evidence, made a not too subtle statement from which it could be gathered that, had the second girl been called, she would have been threatened by or on behalf of the defendant; this he sought to justify because of defense counsel’s perfectly proper allusion to the fact that she had not been produced as a witness by the People. Despite the trial court’s instructions that he desist, he also persisted in repeat-, edly referring to uncharged crimes. True, objections to these were sustained, but the sting is not always completely extracted thereby. Furthermore, he actively engaged his adversary in unseemly charges and countercharges of misconduct. However, taking the present record as a whole, we do not disagree with the Appellate Division’s determination that these errors in context were not significant enough to warrant reversal. Of course, should the outcome of the hearing for which we are remitting this case result in a new trial, this issue will in any event have become academic.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order modified, and the case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.

 To be distinguished are situations in which discovery is sought of witnesses that the prosecutor intends to call at trial. While statements of potential prosecution witnesses are expressly nondiscoverable by statute (CPL 240.20, subd 3, par [b]), the lower courts have divided on the question of whether their names and addresses may be obtained prior to trial (compare, e.g., People v Green, 83 Misc 2d 583; People v Barnes, 74 Misc 2d 743; and People v Bennett, 75 Misc 2d 1040, 1056-1057, with People v Hvizd, 70 Misc 2d 654, 657). This case does not present us with occasion to resolve this conflict (cf. People v Lynch, 23 NY2d 262, 271-272).