OPINION OF THE COURT
Joel J. Tyler, J.
The central issues here are: (1) what official police reports are included within the meaning of "exempt property” (CPL 240.10, subd 3), required to be surrendered to defendant prior to trial as allowable discoverable material; (2) at what stage of the action must it be so delivered, and (3) who — the court or prosecution — shall make the determination which material is relevant for surrender to defendant before trial. Ancillary questions must also be here considered. For example: may the court order the preclusion of all testimony of police officers, where the police department has not obeyed a subpoena, for all its records filed with it in connection with the case and which subpoena had been served substantially before trial and unconnected with any pending hearing.
Here, the defendant secured a judicial subpoena duces tecum, on June 30, 1977, calling upon the police department to produce in court on July 13, 1977 "copies of U.F. 61’s, U.F. 49’s, D.D. 5’s, Intelligence Reports (P.D. 378-151), Arrest Disposition Sheets, D.D. 19’s and any and all other official police reports filed in connection with this case.” The issuing court made no prior inquiry as to the propriety of the subpoena. It was apparently duly served on the police department on July 8, 1977; but no prior advice was given to the District Attorney of the proposed application for the subpoena, nor was a copy thereof served upon him. On or about August 15, 1977, the police department delivered only an arrest disposition sheet, a single U. F. 61 and an unrequested defendant’s fingerprint sheet; with the subsequent advice by the department that those were all the papers filed with the department in the case.
Defendant insists that other completed police forms must *309 have been filed in this case, and if not with the department itself, then \yith the District Attorney’s office, and his failure to secure them has and will prevent him from properly conducting an investigation to aid in preparing a possibly adequate defense. Accordingly, he moves to preclude the prosecution from offering any police testimony at the trial. Of course, the People resist such relief on several grounds, but, primarily, that the defendant is not now entitled to have such reports. The issuing Judge has directed that this matter be referred for final disposition to this court, the trial court.
In this connection, it is significant that by notice of motion, dated June 21, 1977, defense counsel moved under CPL article 240, for discovery and inspection of eight different items, including tape recordings, but nowhere therein did he request copies of any police reports or memoranda. Further, by notice of motion, dated August 12, 1977, defendant again moved, this time for reargument of the original discovery motion, and seeking, among other relief, clarification of the court’s original discovery order. He also requested the disclosure of other and new items not theretofore requested to be disclosed. Significantly, no request, whatsoever, for copies of any police reports was made in this second motion, although it could have and, if desired, should have been included, if not in the first discovery motion, certainly then in the second.
Firstly, we shall dispose of certain ancillary issues raised. The prosecution complains that the police reports subpoenaed, could, and should have been requested in either of the two aforesaid discovery motions, and such reports should not have been attempted to be secured by the ruse of a subpoena, and certainly not without prior notice to the People of the application therefor. Defense counsel, an eminent criminal trial attorney, undoubtedly knows the purpose to be served by our discovery procedure (CPL art 240) and when, and under what circumstances it should and may be used, as distinguished from the essential purpose to be served by a subpoena duces tecum, an instrument and tool for use in aid of giving testimony (CPL 610.10). As counsel was well aware, there was no possibility for a hearing on any motion or trial on or about the date the subpoena was made returnable, and thus there was no need for a- subpoena.
A subpoena may not be used for purpose of discovery or to ascertain the existence of evidence (People v Coleman, 75 Misc 2d 1090, 1091) and the proper means of discovery in a
*310 criminal case is strictly by motion, made within 45 days after arraignment (CPL 255.10, subd 1, par [c]; CPL 255.20, subd 1), with an opportunity afforded to the opposition to be heard (CPL 240.20, subd 5; People v Norman, 76 Misc 2d 644, 649; People v Bennett, 75 Misc 2d 1040, 1061). The use of a subpoena duces tecum, where pretrial discovery is intended is eminently improper and can only delay the expeditious final disposition of the case.
Further, the People complain that the subpoena should never have been issued without prior notice to them that an application therefor will be made, as required by CPL 610.20 (subd 3) and CPLR 2307. In essence, these statutory provisions require that a judicial subpoena duces tecum, directed to any governmental agency or officer or representative thereof, be issued by the court on motion and on one day’s notice to the opposing party and the target of the subpoena, unless, for some good cause shown, the court determines that such notice be dispensed with. No notice was here given to the District Attorney nor is there any indication why it was necessary to issue the subpoena ex parte. The District Attorney states
ithout contradiction, that he was unaware of the existence of the subpoena until the case again appeared on the calendar of this court on August 22, 1977, almost two months after issuance and then for the first time was afforded the opportunity to oppose it.
The authorities do not deem the failure to give such one day’s notice as sufficient to deny the relief requested nor does it constitute a ground to quash the subpoena (Matter of Wilbur F., 70 Misc 2d 674, 675, revd on other grounds 42 AD2d 780); and other experts view the notice requirement as "out-of-date and unnecessary” and is frequently ignored (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 2307, p 238). Nevertheless, that requirement may not be entirely irrelevant, as the instant case well demonstrates. In view of the awesome volume of work handled by the criminal justice system in this jurisdiction, the People have a legitimate interest in saving both the District Attorney’s office and the police department from as much cost, paperwork and internal administrative problems as possible. This interest is properly served if the People have a day’s notice, and preferably more, to object to the issuance of a subpoena on legitimate grounds before it is signed. Thus, the procedures, both legal and administrative, of applying, post
*311 facto, to the courts for protective orders or orders to quash, may be avoided, along with all the trouble and expense attendant upon it.
There is merit to the People’s position that this motion be summarily denied for failure to comply with CPLR 2307, and no ameliorative action in defendant’s favor be taken by this court, particularly in the light of the apparent misuse of the subpoena as an instrument for discovery. If judicial subpoenas continue to be misused, as here, as a discovery device, judicial wisdom can readily justify the quashing thereof and the refusal to take the action here ordered, which effectively aids the party misusing it. Under such circumstances, the offender will be thereafter relegated to seek discovery under CPL article 240, but may painfully discover that that motion too may be denied for late filing beyond 45 days after indictment; and he may further find that the court will not deem an improper use of a subpoena as "good cause” for exericsing his discretion in his favor under CPL 240.30. Counsel should take care that inattention to statutory requirements does not place him and his trusting client in this possible and distressing predicament. The manner of the resolution of the controversy here should not be deemed a precedent for future judicial action, where circumstances substantially point to the inappropriate use of a judicial subpoena. The dispensation here is singular to this case, and may not be employed by this court again under like circumstances.
Defendant’s request that police testimony be precluded for failure to comply with the subpoena, finds support nowhere to my knowledge, either in statute or case law, nor does defense counsel suggest the existence of such statutory or judicial support, outside of his bold assertion. CPLR 3042 (subd [c]) provides for preclusion of testimony where a party fails to comply with a demand for a bill of particulars, while CPLR 2308 authorizes contempt proceedings, or the striking of a pleading or money damages for failure to comply with a judicial subpoena. Nowhere do we find provision for the remedy sought by defendant.
Moreover, even the remedies provided in CPLR 2308 are inappropriate under the circumstances here. Both the remedy demanded (preclusion) and the People’s complaint that the subpoena was unjustified and infelicitous are irrelevant to the central issue, namely, the propriety of defendant’s discovery of the items in question. To deal effectively with that issue, we
*312 shall treat this motion under CPL article 240 as one for discovery of the items mentioned in the subpoena, and order the subpoena, itself, quashed. Necessarily, we shall also consider the term "exempt property”, which, of course, is not discoverable. That term is defined to mean: "(a) reports, memoranda or other internal documents or work papers made by district attorneys, police officers or other law enforcement agents, or by a defendant or his attorneys or agents, in connection with the investigation, prosecution or defense of a criminal action, and (b) records of statements made to such parties, attorneys or agents by witnesses or prospective witnesses in the case.” (CPL 240.10, subd 3.)
The People maintain that all the police reports and papers requested constitute "exempt property”. The defendant insists he is entitled to all of it, now.[1]
Exactly what specific type of reports or documents fall within the definition of "exempt property” is a matter of continuing controversy. Many cases, particularly in the Federal area, hold that all police and other investigatory reports (no matter how pro forma) are not discoverable by defendant pretrial (People v Lawrence, 74 Misc 2d 1019; People v Hvizd, 70 Misc 2d 654; People v Privitera, 80 Misc 2d 344; People v Bottom, 76 Misc 2d 525, 526-527; People v McMahon, 72 Misc 2d 1097). However, a number of courts have granted discovery of a wide range of official documents, including police arrest, investigative and incident reports (People v Wright, 74 Misc 2d 419; People v Rice, 76 Misc 2d 632; People v Inness, 69 Misc 2d 429; People v Sumpter, 75 Misc 2d 55; People v Harrison, 81 Misc 2d 144). All of these latter cases granted defendant discovery of the usual, "routine police reports,” records and forms concerning the defendant’s apprehension and arrest. However, these courts were careful to distinguish discoverable routine, factual reports from memoranda that could be considered the "work product” of the prosecutor and police, which properly fall under the "exempt” category. What constitutes such undiscoverable "work product” eludes precise definition. However, it appears to include interviews with *313 witnesses, police/prosecution memoranda relating to the "theory” of the crime, and other trial preparation materials consisting of more than mere factual data.
However, unfortunately each case must be determined on an ad hoc basis (People v Inness, supra, p 430), with the resultant and frequently unnecessary imposition upon the courts, which must resolve adamant and irreconcilable advocacy positions.
The question as to when the discoverable, exculpatory material should be surrendered is also in controversy and arises out of the unspecific language of Brady v Maryland (373 US 83, 87), which merely requires that it be turned over "upon request”. However, since Brady involved a motion for posttrial review of the prosecutor’s suppression of evidence favorable to the defense, many courts have declined to impose a pretrial duty on prosecutors to disclose exculpatory material (United States v Evanchik, 413 F2d 950; United States v Manhattan Brush Co., 38 FRD 4; United States v Cole, 449 F2d 194; People v Privitera, supra; People v McMahon, supra). Others, have permitted such discovery sufficiently before trial "so that any such material may be used by defendant to its fullest at trial” (People v Harrison, supra, p 149; People v Bennett, supra, pp 1048-1049) or, as stated in People v Bottom (supra, p 528), "at the earliest possible opportunity in advance of trial to allow defense sufficient time to investigate, evaluate, prepare and present it at trial”, while the court in People v Johnson (NYLJ, May 22, 1975, p 15, col 8) was of the view that it should be disclosed at the plea negotiation stage (also People v Wright, supra). The logic, that disclosure should be readily and voluntarily made by the prosecution at the earliest date without the intercession of a court order, is compelling.
Logic and practicality suggest that "the prosecutor must of necessity have a great deal of initial discretion over what is to be disclosed” (People v Bottom, supra, p 530; People v McMahon, supra, p 1100).[2] In the usual case "this court is prepared to rely on the integrity of the prosecutor and to assume that he will discharge his obligations in accordance with his oath,
*314 with full realization that the ominous sanction for failing to disclose appropriate material will be the nullification of the proceedings had herein.” (People v Bennett, 75 Misc 2d 1041, 1048, supra.) This should continue to be the usual judicial attitude. However, the seemingly fixed positions of both sides here, will predictably result in further controversy and delay the trial, unless the court intervenes now.
To require a court in each case to examine initially in camera, all requested discovery material is impractical and an unnecessary awesome burden upon an overwhelmed judicial system and particularly in the light of today’s magnificent administrative problems. Pretrial, in camera inspection by the court usually should be limited when discovery demands reveal a factual basis "for believing that the [prosecutor] may be in possession of evidence” favorable and material to the defense, which he still retains and fails or refuses to surrender. (People v Bottom, supra, p 530; People v Testa, 48 AD2d 691, 692).[3] Although such circumstance is not present here, I shall use the in camera inspection process in this case for the reasons hereinabove stated.
In this connection, defendant seeks to discover all police DD5’s,[4] while the People insist that they have been declared "exempt property” by appellate mandate. (Matter of Morgenthau v Hopes, 55 AD2d 255.) In Morgenthau, defense secured a judicial subpoena, directing the police to turn over any and all police reports (about 360 in number), including but not limited to arrest reports, IJFSl’s (complaint reports) and DD5’s. Upon motion of the People to quash, the court directed that all DD5’s be delivered to it for in camera inspection, and ordered the arrest report and UF 61 promptly delivered to defense counsel. After inspection, the court returned all DD5’s to the District Attorney, holding that they were inappropriate for pretrial discovery and quashed the subpoena.
Defense counsel then secured a new judicial subpoena, a few weeks later, seeking to discover the same police DD5 reports. The second court, on application of the People, quashed the subpoena, relying on the decision of the first issuing Judge. *315 About two months later, the indomitable defense counsel applied for and secured a judicial subpoena from still a third Judge, seeking discovery of the very same DD5’s.[5] That third Judge refused to quash the subpoena, and without examining any of the DBS’s, ordered that they be turned over to defense counsel, in spite of the ruling of the prior Judges.[6]
On appeal, the court held it was error not to quash that subpoena, and unanimously did so, with the comment that, "Initially, we have found the material [i.e., DBS’s] to be 'exempt property’ ” (p 257). The court noted the inferior court’s failure to view the material before ordering the DBS’s to be surrendered, and in the light of that recognition, I cannot agree with the District Attorney, that that appellate holding mandates absolute exemption for DBS’s or any other police reports under any and all circumstances (People v Herman, NYLJ, Oct 27, 1977, p 14, col 1). The thrust and meaning of that decision confirmed that each case must be considered on an ad hoc basis, and an in camera inspection should be conducted of all disputed documents. Certainly, no paper should be deemed absolutely exempt from discovery merely because of its label as "work product” or "opinion” or "research product” or "interior investigatory report” or the like, if, in fact, such an item contains information that defendant would otherwise have a right to discover. Nor should an item be automatically discoverable simply because it is prepared and completed upon a regularly used police business form, filed in the ordinary course of business, if it clearly contains information that the defendant is not entitled to discover. This logic is consonant with CPL article 240 (People v Privitera, supra).
In view of the foregoing, the judicial subpoena issued herein on June 30, 1977 is quashed and any and all papers and documents demanded therein shall be secured by the District Attorney and brought before this court on or before January 3, 1978 for an in camera inspection. This court will thereafter make a determination, in accordance with law, as to which papers and documents are discoverable and copies thereof will be ordered to be delivered to defendant promptly.

. "No court in this State, nor any Federal court, has ever required the prosecution to afford a general unlimited right of discovery in a criminal case.” (People v Bennett, 75 Misc 2d 1040, 1047, 1050; Moore v Illinois, 408 US 786) and, particularly, not in the light of the limitations of our discovery statute. (People v Privitera, 80 Misc 2d 344, 346.) What should be turned over is a matter of judicial discretion (People v Lynch, 23 NY2d 262).

. But, see, People v Rice (76 Misc 2d 632, 634, supra), where all police material, except witnesses’ statements, were ordered turned over, with leave to the People to move for a protective order if the People deem certain material confidential or exempt. Rice is a disciple of the broadest possible discovery, or "full discovery” as it characterizes its position, a position not yet consonant with the majority view.

. The courts in People v Bennett (supra, p 1047) and Williams v Dutton (400 F2d 797), also justify in camera inspection where the discovery demands involve specifically identified documents.

. These are complaint follow-up reports prepared by detectives investigating a complaint, and may contain hunches, surmises, theories, "raw” information, including that which may prove false, relevant and irrelevant matter, names, addresses and statements of witnesses, etc.,

. The first two subpoenas related to defendant, Lewis 17X Dupree; the third, related to defendant, Bobby 9X Hopes. They were tried separately, relative to the same incident and the DDS’s were prepared in connection with that single incident.

. The detailed history of the matter is contained in the record on appeal, which this court examined.