OPINION OF THE COURT
Duncan S. McNab, J.
Pursuant to CPLR 2304, defendant Ronald Crean moves to quash a “trial” subpoena duces tecum calling for production of certain books and financial records pertaining to defendant’s former law practice.[1]
By way of background, a Grand Jury subpoena duces tecum dated June 23, 1982, calling for production of similar, although not the identical records sought here, was previously served on Mr. Crean, prior to his indictment herein. Said Grand Jury subpoena was withdrawn on July 19,1982 after Mr. Crean had moved to quash it on grounds that production of the sought-after records would violate *527 both his Fifth Amendment privilege and the attorney-client privilege, a withdrawal which the People now argue was undertaken strictly out of concern not to confer transactional immunity on Crean. In no way, the People argue, was the act of withdrawal intended as a concession as to any of the issues raised on the initial motion to quash.
At the same time, companion motions to quash two corporate subpoenas, served on Roñal Realty, Inc., and R.P.C. Enterprises, Inc., were denied in all respects by decision and order of this court dated July 26, 1982.
The next day, July 27, 1982, petitioner was indicted for the crime of grand larceny, second degree, based upon his alleged theft of Medicaid reimbursement moneys owing to the Mental Retardation Institute by the Sullivan County Department of Social Services. Following defendant’s arraignment on said indictment on August 3, 1982, the Deputy Attorney-General issued the instant “trial” subpoena duces tecum dated August 3, 1982, calling for production of the sought-after books and records before the court.[2]
Petitioner now moves to quash the instant subpoena on two of the same grounds which he previously raised in connection with the withdrawn Grand Jury subpoena, i.e., that production of the sought-after books and records would violate his Fifth Amendment privilege against self incrimination as well as the attorney-client privilege. In addition, defendant argues that the Deputy Attorney-General should not be permitted to utilize a subpoena duces tecum for purposes of pretrial discovery.
Respondent, on the other hand, opposes the motion to quash in all respects. Insofar as the Fifth Amendment issue is concerned, the Deputy Attorney-General argues that since the defendant, recently disbarred from the practice of law, was required to keep the various records sought in his capacity as an attorney pursuant to the rules and regulations of the First Department as contained at 22 NYCRR 603.15, that such records are therefore “required records” outside the protection of the Fifth Amendment. There can be no question, assuming that defendant was in *528 fact a sole practitioner prior to being disbarred, that his law firm’s financial records would be protected by the Fifth Amendment if they did not fall within the so-called “required records” exception thereto. (See United States v Slutsky, 352 F Supp 1105 [MacMahon, J.]; United States v White, 322 US 694.) It is by now well settled that the records of both a nursing home and an adult home, entities which are subject to extensive State regulation, fall within this “required records” exception to the Fifth Amendment. (See Matter of Sigety v Hynes, 38 NY2d 260; Matter of Friedman v Hi-Li Manor Home for Adults, 42 NY2d 408.)
Significantly, the Court of Appeals, in Sigety (supra, at p 268), pointed out that entities such as “hospitals” were subject to extensive regulation under, among others, title 10 of the Official Compilation of Codes, Rules and Regulations of the State of New York. Similarly, pursuant to 22 NYCRR 603.1 and 603.15, an attorney who, inter alia, was either admitted to practice in, or who has an office in the First Department, must also maintain and when necessary, must make available, a variety of bookkeeping records for some seven years after the event occurs. Moreover, while petitioner’s record-keeping practices are regulated by the rules of the First Department, the first section of those rules, i.e., section 603.1 (b), provides that “nothing herein contained shall be construed to deny to any other court or agency such powers as are necessary for that court or agency to maintain control over proceedings conducted before it” (emphasis added). Accordingly, consistent with the clear purport of this “umbrella” section, this court would feel unencumbered in deciding the instant motion on its merits despite the language contained at section 603.15 (d), i.e., “[a]ny of the records required to be kept by this rule shall be produced in response to a subpoena duces tecum issued in connection with a complaint or investigation pending before the Departmental Disciplinary Committee or shall be produced at the direction of this court [i.e., the First Department] before any person designated by it.” (Emphasis added.)
Moreover, there is authority for the proposition that the Deputy Attorney-General now has the power to prosecute all criminal offenses in relation to the Medicaid program. *529 (See Matter of Mann Judd Landau v Hynes, 49 NY2d 128, 133, 135; and see Matter of Deo Assoc., NYLJ, Oct. 26, 1979, p 13, col 5 [Balbach, J.].)
Thus, since the list of records being sought is precisely that required to be kept pursuant to these official rules and regulations, petitioner’s motion to quash is hereby denied in all respects on Fifth Amendment grounds.
Turning to the issue of attorney-client privilege, the sole claim advanced by petitioner is that production of the sought-after records would reveal information bearing on fee arrangements and with the amounts of awards and settlements obtained on behalf of unspecified clients. The law is clear in this State that an attorney may be required to testify regarding fee arrangements without violating the attorney-client privilege, since Such fee arrangements do not ordinarily constitute a confidential communication. (See Matter of Priest v Hennessy, 51 NY2d 62; see, also, Randy Int. v Automatic Compactor Corp., 97 Misc 2d 977 [Charles Cohen, J.]; and see 97 CJS, Witnesses, § 283.) The court would feel that the rationale of Priest (supra) would extend to matters involving awards and settlements as well. Accordingly, petitioner’s motion to quash would be denied in all respects on this ground as well.
However, the court feels that a different situation exists with respect to defendant’s third point, i.e., that a subpoena duces tecum is not to be used for purposes of pretrial discovery. The law is clear that once an indictment is issued, a Grand Jury subpoena duces tecum may not be used for the sole or dominant purpose of preparing the pending indictment for trial. (See Matter of Hynes v Lerner, 44 NY2d 329.) Here the Deputy Attorney-General has instead, postindictment, served upon the defendant a trial subpoena duces tecum, which in the words of the Deputy Attorney-General, is concededly “demanding certain of the books and records defendant was required to maintain while a practicing attorney and for seven years after the events to which they relate * * * as evidence of the crime with which defendant is charged in the instant indictment.” (Emphasis added.) Since the People are concededly looking for evidence of this alleged crime and no other, quaere, should the result be any different simply because *530 the People have served on defendant, on the very day of arraignment upon the indictment, a trial, as opposed to a Grand Jury subpoena? This court thinks not.
First, this court is not persuaded that CPL 610.25 mandates a result favorable to the People. At the outset, it is at least arguable that the thrust of this section, which was speedily enacted to effectively overrule Matter of Heisler v Hynes (42 NY2d 250) and Matter of Windsor Park Nursing Home v Hynes (42 NY2d 243) is to permit retention of books and records by either the court or the prosecutor, on behalf of the Grand Jury. (See CPL 610.25, subd 1.) However, even assuming this section is not so limited in scope, the central question becomes whether or not the September 1, 1979 amendment to CPL 610.25 (subd 2), beginning with the key language “[njothing in this article shall be deemed to prohibit the designation of a return date for a subpoena duces tecum prior to trial” comes into conflict with the discovery provisions contained at CPL article 240, and if so, which prevails. This court does perceive a conflict and without any case on all fours to provide guidance, would rule that the more specific and restrictive provisions contained in the discovery article, should control.
In his 1979 Supplementary Practice Commentary to CPL 610.25, Mr. Joseph Bellacosa notes that “[s]ome concern has been expressed that this amendment holds the seeds of abuse and fractious and dilatory litigation inasmuch as it provides no statutory exemptions of material as may be found in article 240, the discovery article. This is a legitimate concern which should find expression in an early amendment before the motions to quash, limit, hold in contempt, etc., take hold as a dilatory tactic.” (McKinney’s Cons Laws of NY, Book 11 A, 1981-1982 Pocket Part, p 80.) The discovery provisions, on the other hand, i.e., CPL 240.30 and 240.40, are much more narrowly drawn in terms of a prosecutor’s reciprocal discovery rights. In point of fact, had the Deputy Attorney-General sought to obtain defendant’s books and records by way of discovery motion, it appears that such an application would have been denied. Even under the broadly worded CPL 240.40 (subd 2, par [b]), the court may only order the defendant to provide nontestimonial evidence, and it seems to this court that the *531 written entries contained in the sought-after books and records constitute testimonial communication equally as well as an oral communication. (See Gilbert v California, 388 US 263, 266, 267; Schmerber v California, 384 US 757, 764, 765.)
What it boils down to then is that if the Deputy Attorney-General cannot obtain these records by means of a discovery motion, neither should he be permitted to utilize CPL 610.25 (subd 2) to go “backdoor” to get material he otherwise would not be privy to. In other words, this court is not persuaded that CPL 610.25 was intended to obliterate the narrowly drawn reciprocal discovery provision of CPL article 240. Such a result appears to be consistent with those relatively few cases wherein the courts have attempted to distinguish the subpoena process from the discovery process. For example, in the course of quashing subpoenas duces tecum served by defendant on the New York City Police Department, the court (Kalina, J.), in People v Norman (76 Misc 2d 644, 649), held that “A subpoena duces tecum should not be used to circumvent limitations on discovery by either the prosecutor or the defendant and a subpoena for the production of material exempt from discovery should not be issued by the court”.
This court would further agree with the opinion expressed in Norman (supra, at p 650) “that the Legislature of our State in enacting laws relating to the issuance of subpoenas never intended that a subpoena duces tecum could be used to expand the normal use of discovery and inspection in criminal cases.”
Similarly in People v Simone (92 Misc 2d 306, 309 [Tyler, J.], affd 71 AD2d 554), the court, in quashing the judicial subpoena, stated that “Defense counsel * * * undoubtedly knows the purpose to be served by our discovery procedure (CPL art 240) and when, and under what circumstances it should and may be used, as distinguished from the essential purpose to be served by a subpoena duces tecum, an instrument and tool for use in aid of giving testimony (CPL 610.10). As counsel was well aware, there was no possibility for a hearing on any motion or trial on or about the date the subpoena was made returnable, and thus there was no need for a subpoena.”
*532 Likewise here, there was no possibility of a hearing or other pending proceeding on or about the August 17, 1982 return date as to which a subpoena duces tecum could have served a viable purpose.
Finally, and perhaps most importantly, the Court of Appeals has also accepted this distinction drawn by various of the lower courts. In People v Gissendanner (48 NY2d 543), on the eve of trial, defense counsel requested the court to issue subpoenas duces tecum calling for the production of police personnel records. The court refused. In sustaining the lower court’s refusal, a unanimous Court of Appeals, among other points, noted (p 551) “that, in general, the subpoena duces tecum may not be used for the purpose of discovery or to ascertain the existence of evidence” citing People v Coleman (75 Misc 2d 1090, 1091 [Lockman, J.]). To the extent that the case of People v Brown (72 Misc 2d 526 [Kramer, J.]), holds the other way, this court feels it is out of step and collectively outweighed by the other decisions, discussed herein, inclusive of Gissendanner (supra).
Since the weight of authority holds that a subpoena is not to be used as a discovery tool, and since, despite disclaimers to the contrary, the People must be deemed to have a discovery purpose in mind where they acknowledge at page 16 of their opposing affirmation, that “the simple fact is that defendant is in possession of evidence that the People will seek to offer at trial”, defendant’s motion must be granted in all respects, and the trial subpoena at issue is hereby quashed.

. The defendant was recently disbarred. (See Matter of Crean, 86 AD2d 107.)

. By way of cover letter accompanying their opposing affirmation, the People have indicated that they have withdrawn that portion of the subpoena denoted as Item No. 6.