OPINION OF THE COURT
Michael L. Pesce, J.
Before this court is a motion to quash a subpoena duces tecum directed to the custodian of records for the United States Attorney, Eastern District of New York. The subpoena was issued by counsel for the defendant, who is charged with eight counts of grand larceny in the second degree and participating in a scheme to defraud in the second degree. The motion to quash is made by the office of the United States Attorney.
It would be an understatement to note that this case has generated extensive motion practice. The instant subpoena and the ensuing litigation represent but one skirmish in the lengthy battle for discovery waged by the defendant. Much of the conflict stems from the expected testimony of one Spencer Lader, formerly charged as a codefendant.*
*576 Originally, Lader was not scheduled to testify, but the District Attorney’s office then reversed its position and indicated that he would, in fact, take the stand. Acting upon this information, the defendant sought disclosure of material regarding Lader, pursuant to Brady v Maryland (373 US 83 [1963]). When it was learned that Lader was cooperating with the United States Attorney’s office in a Federal investigation, the scope of the requested disclosure from the District Attorney’s office was broadened to include any Brady material obtained by them from Federal authorities. In said motions for discovery, the defendant argued that the materials would show a bias or motive on the part of Spencer Lader to testify against Heller. The motions were pending for more than six months, while the People made a number of requests for additional time to answer and to comply. The information eventually provided to the defendant through the District Attorney’s office was found by him to be unsatisfactory. When the Federal authorities officially denied possession of any additional Brady material the subpoena at issue was signed by this court.
The position of the United Stales Attorney’s office is that it is . without authority to comply with the subpoena and therefore must decline to do so. This is based in large measure upon regulations set forth in 28 USC — Judicial Administration of Federal Regulations (28 CFR 16.21 et seq.), which governs the production or disclosure of information in Federal and State proceedings. 28 CFR 16.22 generally prohibits production or disclosure where the United States is not a party to the proceeding, except where specifically authorized by appropriate officials in the Department of Justice.
According to the affirmation submitted by the Assistant United States Attorney, the Department of Justice did not authorize disclosure and instead instructed the Eastern District to seek to quash the subpoena. It is their contention, based on Touhy v Ragen (340 US 462 [1951]) and People v Carbonaro (104 Misc 2d 145 [Supreme Ct, Kings County, 1980]), that absent such authorization, compliance may not be judicially compelled. This court does not agree.
The Government has appeared in this matter behind the shield of “binding” Federal regulations, claiming that disclosure would hamper pending investigations by revealing confidential sources and investigative techniques employed by the Federal Bureau of Investigation. This claim is made notwithstanding the fact that the District Attorney’s office has already had at least limited access to those files. While this court appreciates *577 the sensitive nature of the investigations being conducted, its primary responsibility is to safeguard the defendant’s constitutional right to a fair trial in a State prosecutorial process.
The rights to compulsory process and to confrontation of witnesses are basic to our system of justice. The Supreme Court has recognized its “manifest duty * * * to vindicate those guarantees” (United States v Nixon, 418 US 683, 711 [1974]). The landmark cases of Brady v Maryland (supra), and Giglio v United States (405 US 150 [1972]), underscore the rights of criminal defendants to discover exculpatory evidence in the possession of the prosecution. The duty of the prosecuting authority to comply is an affirmative one (United States v Agurs, 427 US 97 [1976]), grounded in considerations of “elemental fairness to the defendant and as a matter of professional responsibility” (People v Cowart, NYU, Jan. 29, 1982, p 7, col 2 [Supreme Ct, Bronx County, Bernstein, J.]). When those guaranteed rights are in direct conflict with a policy of another governmental authority, one must yield. It is the opinion of this court that, in this case, the rights of the competing authority must yield to those of the defendant.
Similar problems have arisen on the Federal level as well, where the power of a Federal subpoena against the Department of Justice was in question. In United States v Feeny (501 F Supp 1324 [US Dist Ct, Col, 1980]), the court concluded that such a subpoena could be enforced, observing that “A defendant has certain absolute rights under our system of justice, and he cannot be deprived of those rights because of claims by the prosecution that if he is given those rights, some allegedly more important case may be jeopardized” (p 1333).
It is the responsibility of the court, and not of the executive branch, to determine the admissibility of evidence (United States v Reynolds, 345 US 1 [1952]). In a criminal case, that principle takes on additional import. A trial cannot comport with the requirements of due process if evidence pertaining to guilt or innocence is kept under wraps, and this must be true regardless of the motives of the prosecution in doing so (Brady v Maryland, supra). Even an inadvertent failure to disclose may result in a denial of due process (People v Cowart, supra, citing People v Simmons, 36 NY2d 126). Though an ongoing investigation might be affected, this court must act with primary regard for the case pending before it.
The cases cited by the United States in support of its motion to quash do not establish an inviolate right of the Department of Justice to refuse disclosure. The scope of the decision in Touhy v *578 Ragen (supra) was specifically limited by the Supreme Court, which addressed only the act of a subordinate in complying with an order not to disclose. It did not address “the ultimate reach of the authority of the Attorney General to refuse to produce at a court’s order the government papers in his possession”. (Touhy v Ragen, 340 US 462, 467, supra.)
Further, in People v Carbonaro (supra), a case in which a motion to quash was granted, the court specifically noted that no issue of disclosure under Brady (supra) was involved. It declined to enforce a defendant’s right under People v Rosario (9 NY2d 286), which is not one of constitutional dimension, but turns instead on common law and public policy considerations. The issue in the case at bar" is therefore distinguishable from those cited by the Government for it does test the right of the Attorney General to refuse production of material whose disclosure is warranted under Brady.
This court recognizes that the power of the subpoena may not be used indiscriminately, permitting the defendant to conduct a “fishing expedition” in Government files. The discovery sought must be authorized by statute or within the limits established by case law. The information sought through subpoena in this case is properly subject to discovery. Defendant Heller contends that Lader was promised immunity from further prosecutions for substantive crimes, in exchange for which he would assist in investigations and testify wherever necessary. This information speaks to a possible motive or bias on the part of a witness and must be disclosed (Giglio v United States, supra; People v Wallert, 98 AD2d 47 [1st Dept 1983]; People v Cowart, supra). Where, as here, the testimony of an admitted coconspirator is to be placed before a jury, the reliability of that witness will be crucial in deciding defendant’s guilt or innocence. The jury is clearly entitled to hear and evaluate the agreement made by Lader with the Federal authorities so that it may make an informed evaluation of Lader as a witness.
Finally, this court is aware that the subpoena requests the disclosure of extensive amounts of information. As a practical matter, the scope of disclosure may very well have to be narrowed, and this court stands ready to assist in that regard. However, the basic principle underlying this decision remains that disclosure must be compelled.
The motion to quash is accordingly denied.

 Lader was charged, along with Heller, in the indictment which preceded the existing accusatory instrument, 5054/82. He subsequently pleaded guilty to four counts of grand larceny in the second degree before the Honorable Ruth Moskowitz. A superseding indictment was later filed against Heller alone.