OPINION OF THE COURT
Howard E. Bell, J.
Before the court is a motion to suppress a subpoena duces tecum issued by defendant’s attorney and served on Steven Levin, the father of Jennifer Levin, for the production of his daughter’s personal diary (the diary).
Jennifer Levin’s body was found in Central Park on August 26, 1986. Defendant, Robert Chambers, has been indicted for *689 murder in the second degree (two counts) for allegedly causing her death. The diary, which was not among the evidence found at the crime scene, was given to the police by Steven Levin to aid in their investigation of Jennifer Levin’s death. The police delivered the diary to the District Attorney.
Defendant made an application to this court for an order authorizing the issuance of a subpoena duces tecum to the District Attorney for production of the diary.[1] The court heard oral argument with respect to the application on November 20, 1986. The Assistant District Attorney who appeared at the oral argument was not the assistant in charge of the case. In a letter dated November 21, 1986, the assistant in charge of the case informed the court and defense counsel that the diary had been returned to the Levin family.
Upon learning that the document was not in the possession of the District Attorney, defense counsel served a subpoena duces tecum on Steven Levin for its production. On December 18, 1986, after hearing oral arguments with respect to the motion to quash, the court ordered Steven Levin’s attorney to produce the diary for an in camera inspection. It was submitted for the court’s in camera inspection on December 30, 1986.
The question presented is whether defendant has a right to inspect the personal diary of his alleged victim to determine whether it contains any information useful to his defense.
Mr. Levin’s attorney asserts that defendant’s issuance of the subpoena duces tecum is an attempt to circumvent the discovery provisions contained in CPL article 240; the diary does not contain exculpatory or other relevant or material matter; and it is a private, confidential and sensitive document. Conversely, defense counsel contends that since no right of privacy exists after Ms. Levin’s death and because defendant has a right "to compulsory process and the need to investigate this case”, he should be allowed to inspect this "highly relevant and material document”. In this connection, defense counsel asserts that it is reasonably likely that the diary will bear fruit on the issue of "who was the initial aggressor and our client’s account of what happened in Central Park, which the prosecutor will attempt to attack vigorously at trial”. Finally, defendant assails the behavior of the prosecutor in connection *690 with her possession of the diary and suggests that this behavior raises an inference of relevancy. The court finds little merit in defense counsel’s contentions.
While a subpoena duces tecum may be employed by defense counsel to compel the production of documents to be used in connection with testimony given by a witness at trial (see, CPL 610.10; People v Ramirez, 129 Misc 2d 112; People v Crean, 115 Misc 2d 526; People v Coleman, 75 Misc 2d 1090), it cannot be employed for the purpose of discovery or to ascertain the existence of evidence (see, People v Gissendanner, 48 NY2d 543; People v Bova, 118 Misc 2d 14; People v Crean, supra). Nor can it be used as a tool for circumventing the discovery procedure contained in CPL article 240. (See, People v Ramirez, supra; People v Cammilleri, 123 Misc 2d 851; People v Simone, 92 Misc 2d 306, affd 71 AD2d 554; People v Hasson, 86 Misc 2d 781.) Accordingly, courts confronted with motions to quash subpoenas duces tecum used to ascertain the existence of evidence have restricted the enforcement of such subpoenas to the scope of discovery. (See, People v Cammilleri, supra; People v Crean, supra.)
Defendant is not entitled to inspect the diary pursuant to the discovery provisions. The document is not in the District Attorney’s possession,[2] and it is not discoverable by defendant as of right, pursuant to CPL 240.20 (1), or in the discretion of the court, pursuant to CPL 240.40 (1) (c). Moreover, defendant has not demonstrated that it is reasonably likely that the diary contains evidence or potential evidence. (Compare, People v Gissendanner, supra, and People v Cammilleri, supra, where the courts indicated that the issuing party must demonstrate that it is reasonably likely that the file will contain evidence, with People v Miranda, 115 Misc 2d 533, where the court demonstrated a willingness to examine documents, in camera, to determine whether they contained evidence.) Defendant is primarily seeking access to the diary to "explore and investigate” possible leads to material which may be irrelevant. Clearly, the controlling case law does not sanction this purpose. (See, People v Heller, 126 Misc 2d 575; People v *691 Bova, supra; People v Price, 100 Misc 2d 372; People v Hasson, supra; where the courts noted that a party cannot fish for relevant material even within a specific set of files.)
Even though defendant is not entitled to discover the diary and has not demonstrated that it is reasonably likely that there is evidence or potential evidence in it, the court, in the exercise of its discretion and in the interest of justice, conducted an in camera examination of the diary, on December 30, 1986, to determine whether any material contained in it should be disclosed to defendant. (See, People v Miranda, supra; People v Price, supra; People v Harte, 99 Misc 2d 86.) In reaching its decision to examine the diary in camera, the court considered numerous factors, including that: the defendant’s name appears in the document; it is a discrete document which had been in the possession of the District Attorney;[3] the Levin family has a limited right to retain personal family papers free from interference or harassment by defendant (cf, CPL 240.50, pursuant to which the court can issue a protective order limiting or denying discovery; accord, People v Beauchamp, 126 Misc 2d 754; People v Bolivar, 121 Misc 2d 229); Ms. Levin is deceased and, of course, not available to testify at trial; sharply conflicting factual accounts were given by the attorneys regarding the contents of the diary and the District Attorney’s possession of it;[4] and defendant has constitutional rights which must be protected.
During its examination of the diary, the court found no admissible evidence; it found nothing in the document which was relevant and material to the defendant’s case or which must or should be disclosed to the defendant pursuant to his due process right to a fair trial or pursuant to any other *692 constitutional, statutory or common-law right. Defendant’s contention that the court should not have conducted an in camera review because his attorney is in the best position to determine the relevancy of the material contained in the document is unfounded. Defendant should not be allowed to conduct an "unrestrained 'tour of investigation [of the diary] seeking generally useful information’ ” (People v Poole 48 NY2d 144, 148; see, e.g., People v Gissendanner, supra).
For the foregoing reasons, the court, in the exercise of its discretion, grants Steven Levin’s motion to quash the subpoena duces tecum. Counsel for Mr. Levin is directed to produce the diary in court on January 30, 1987 to be marked for identification.

. CPL 610.20 (3) allows a defense counsel to issue a subpoena duces tecum to a "department, bureau or agency of the state or of a political subdivision thereof, or to any officer or representative thereof’ only upon order of a court.

. Although Brady v Maryland (373 US 83) applies only to information in the possession or control of the prosecution, the fair administration of justice and the right to compulsory process require the production of evidence favorable to a defendant which is in the hands of a third party. (See, People v Heller, 126 Misc 2d 575; People v Harte, 99 Misc 2d 86.) This is particularly true, when, as here, the document has been examined and temporarily retained by the prosecution.

. Courts are receptive to the in camera inspection of a small number of specifically identified documents because such examinations are practicable and not very burdensome. (See, People v Simone, 92 Misc 2d 306, 314, n 3; People v Bennett, 75 Misc 2d 1040; Williams v Dutton, 400 F2d 797.)

. The attorneys have many factual disputes concerning the diary. For example, defense counsel has alleged that the chief prosecutor in this case, before she had read the diary and before she had been assigned to the case, told him "that the diary, among other things, chronicles kinky and aggressive sexual activity [by Jennifer Levin] with many lovers” and twice refers to defendant. The prosecutor has conceded that she told defense counsel that defendant’s name appears twice in the diary. However, she strenuously denies telling defense counsel that the document chronicles any "kinky or aggressive sexual activity” by the deceased. The District Attorney and defense counsel also give different versions as to how the diary was obtained by the District Attorney and as to how each learned of its existence.