(April 21, 1992)*

■ The People of the State of New York, Respondent, v Eugene Serrando, Appellant.—

The complainant testified at trial that defendant, aided by others, beat and robbed him in or about a Manhattan building complex on three separate occasions during May and July of 1989. Defendant was convicted only of charges stemming from the final attack, committed on July 28, 1989, with the threatened use of a knife, after which the complainant called the police.

The trial court properly denied defendant's request for full disclosure of hospital records in connection with the complainant's voluntary admission into a hospital for treatment of depression the day after the first alleged attack in early May 1989. The court examined the records *in camera* and found nothing therein to suggest that the complainant, an admitted former drug user, suffered at the relevant time periods from any impairment of perception or memory, or any psychotic

---

* Not published with other First Department decisions of April 21, 1992.

delusions. In any event, pursuant to the trial court's rulings, defense counsel was given the opportunity to cross-examine the complainant regarding the hospitalization, the fact that the complainant did not mention the alleged robbery to the hospital psychiatrist, and the complainant's use of drugs during the period in question. In such circumstances, there is no support for the speculative claim, raised for the first time by defendant on appeal, that full disclosure of the hospital records would have uncovered *Brady* material.

To rebut defendant's testimony that he had given the complainant $25 to buy five bottles of crack cocaine and merely wanted his money returned, the People called Officer Profert, who had interviewed defendant after his arrest. The officer testified that defendant told him that he had asked the complainant for the money he owed him for crack cocaine. During cross-examination, it was revealed that the officer used his contemporaneous handwritten notes of the interview immediately thereafter to prepare a formal typewritten interview report. In response to a defense request for the handwritten notes, of which the prosecutor stated he had previously been unaware, the officer stated that they were in the case folder; the trial court directed that they be produced. When the officer could not locate the notes, a hearing out of the jury's presence was held at which the officer testified that he had placed his handwritten notes next to his typewriter and had typed them "word for word" onto the report completed within one-half hour of the interview. Nothing was added, subtracted or changed. This testimony went unchallenged. Thus, the trial court was justified in finding that the typed report was "identical to the original notes." The handwritten version of an identical typewritten report is precisely the type of document that would qualify as the duplicative equivalent of material already disclosed. *(See, People v Whitaker,* 165 AD2d 775, 776; *People v Witherspoon,* 156 AD2d 306, 308, *affd* 77 NY2d 95, *cert denied sub nom. Carter v New York,* — US —, 111 S Ct 1599).

Defendant's only argument for asserting the inapplicability of the duplicative equivalent rule is his claim, never advanced before the trial court, that "[w]ithout the missing document, the court * * * had no basis upon which to make such a ruling". Officer Profert's detailed testimony as to how he copied his written notes, "word for word", credited fully by the trial court, obviously provided such a basis. *(See, People v Whitaker, supra.)* In that regard, defendant's reliance on *People v Wallace* (76 NY2d 953) for the proposition that lost

notes cannot be proven to be duplicative of other materials is misplaced. The only issue in *Wallace* was whether the defendant was prejudiced by the loss of the notes. The People did not dispute that the notes constituted *Rosario* material. The court's statement that "[t]here is no way to know whether the description contained in the 'buy' report matched those contained in the lost notes" *(supra,* at 955) was made in the context of whether such circumstance would alleviate the prejudice *(supra).* Nor is there any indication that the officer in *Wallace* specifically testified, as here, that the material in the documents was identical. Thus, since there was no *Rosario* violation, we need not reach the issue of prejudice.

We have considered defendant's remaining claims and find them to be without merit. Concur—Sullivan, J. P., Kupferman, Ross and Rubin, JJ.

Smith, J., concurs in a separate memorandum as follows: While I concur in the affirmance, a word about *Rosario* material is necessary.

The complainant testified at trial that defendant, aided by others, beat and robbed him in or about a Manhattan building complex on three separate occasions during May and July of 1989. Defendant was convicted only of charges stemming from the final charged attack, committed on July 28, 1989, with threatened use of a knife, after which the complainant called the police.

The trial court properly denied defendant's request for full disclosure of hospital records in connection with the complainant's voluntary admission into a hospital for treatment of depression on the day after the first alleged attack, in early May 1989.

After the defendant testified that he gave the complainant $25 to buy five bottles of crack cocaine and merely wanted his money back, the People called a police officer who had interviewed defendant after his arrest. The officer testified that defendant told him he had asked the complainant for money owed to defendant for five bottles of crack cocaine which he had given to the complainant. During cross-examination, it was revealed that the officer used his contemporaneous handwritten notes of the interview to prepare a formal typewritten interview report immediately thereafter. When the defense requested the handwritten notes (which the prosecutor stated he had previously been unaware of), the officer stated that they were in the case folder and the trial court directed that they be produced. When the officer could not locate the notes,

a hearing was held at which the officer testified that he had placed his handwritten notes next to his typewriter and had typed them word-for-word onto the formal interview report completed within 1/2 hour of the interview. It is clear that the notes were *Rosario* material (CPL 240.44, 240.45; *People v Rosario,* 9 NY2d 286 [1961]; *People v Wallace,* 76 NY2d 953 [1990]). However, it is also clear that such missing notes cannot be found to be the duplicative equivalent of the typed report *(People v Geathers,* 172 AD2d 134 [1991]). There was no showing of prejudice to the defendant from the lost handwritten notes *(People v Martinez,* 71 NY2d 937, 940 [1988]; *People v Geathers, supra,* at 137). Considering the prosecutor's lack of knowledge of the handwritten notes in question, as well as defendant's opportunity to fully cross-examine the officer on the issue, the trial court properly exercised its discretion in denying defendant's application for the drastic remedy of a mistrial based upon the misplaced notes *(see, e.g., People v Hyde,* 172 AD2d 305, *lv denied* 78 NY2d 1077).