*730 OPINION OF THE COURT
Budd G. Goodman, J.
The defendant has been indicted for the crimes of kidnapping, aggravated sexual abuse, sodomy and related crimes, arising out of an incident which occurred in November 1996. In connection therewith, the defendant subpoenaed from Columbia University copies of all e-mail communications sent to, and received by, the complainant, using her Columbia University e-mail account, between September and December 1996. Columbia University complied with the defendant’s subpoena duces tecum by producing directly to the court several computer disks, which when downloaded and printed consisted of some 2,400 written pages of communications between the complainant and the defendant and the complainant and various third parties. This court determined that it was appropriate for it to review the e-mails, in camera, in order to make a determination as to whether any or all of the materials produced should be disclosed to the defendant.
After reviewing the motion to oppose disclosure and memorandum of law in support thereof submitted by counsel to the complainant, a motion by the prosecution for a protective order preventing disclosure of the third-party e-mails and applicable statutory and case law, the court finds that the production by the court to the defendant of these third-party e-mails is not warranted, since the defendant has ultimately failed to establish (i) that the material sought pursuant to the subpoena duces tecum contains “evidence” (the defendant’s allegations in support thereof being merely speculative), and (ii) that he cannot obtain the information contained in the e-mails from other sources, i.e., speaking directly with the persons who communicated with the complainant in these e-mails. With regard to the latter, the court believes that the defendant has available to him sources of direct investigative access to the information sought by subpoena.
A subpoena duces tecum is a judicial subpoena returnable to the court. (Matter of Roman, 97 Misc 2d 782.) GPL 610.25 requires only the production to a court of materials subpoenaed, but it does not require the disclosure of such materials to the defense (or otherwise). (People v Harte, 99 Misc 2d 86.) It is a proper function for a court to conduct an in camera inspection of subpoenaed materials produced in order for the court to make a determination as to whether any of such material should be disclosed. (People v Chambers, 134 Misc 2d 688; *731 People v Miranda, 115 Misc 2d 533; People v Price, 100 Misc 2d 372; People v Harte, supra.) Where compelling social and policy considerations are confronted, a court has little choice but to expend the judicial time and effort necessary to make an in camera determination of whether the subpoenaed material should be disclosed, following such court’s in camera inspection. (People v Miranda, supra, at 536; Matter of Roman, supra, at 785; People v Simone, 92 Misc 2d 306, affd 71 AD2d 554 [1st Dept 1979].)
The court’s in camera examination of the third-party e-mails produced by Columbia University pursuant to the defendant’s subpoena found nothing in those materials to be directly relevant and material to the defendant’s case or which must or should be disclosed to the defendant.[1] (See, People v Chambers, supra.) Any argument by the defendant that it is not the court’s role to make an in camera inspection or an ultimate determination as to the dissemination of the materials examined pursuant to the court’s in camera review, is without merit. (People v Chambers, supra; People v Miranda, supra; Matter of Roman, supra.)
Although the complainant is not a party to the criminal action against the defendant, any party affected by process of a court has standing to apply to the court for modification, vacatur or reconsideration of a decision or order issued by a court. (See, People v Grosunor, 108 Misc 2d 932.) Thus, the court finds that the complainant possesses standing to challenge the dissemination of the e-mails by and between herself and third parties.
The right of a defendant to compel a witness pursuant to a subpoena to give testimony or produce documentary or other physical evidence has a constitutional basis predicated upon a defendant’s need to compel the production of evidence in order to prepare and present a defense to the charges brought against him or her. (People v Morrison, 148 Misc 2d 61.) That right, however, rather than being an unlimited and unrestricted right to compel by compulsory process any documents sought by a *732 defendant, is a restricted right, whose exercise must satisfy certain relevancy and evidentiary standards and which is further subject to the availability of other means for obtaining the documents sought. (Supra.)
It has been held that “[t]he right to compel material pursuant to [a] subpoena is * * * limited to the compulsion of ‘evidence’ and is not a right to compel the production of documents that refer to evidence or that provide leads that will assist in the identification of evidence or to ascertain the existence of witnesses or evidence”. (People v Morrison, supra, at 67; accord, see, People v Di Lorenzo, 134 Misc 2d 1000; People v Simone, supra; People v Cammilleri, 123 Misc 2d 851; People v Chambers, supra; see, contra, People v Cabon, 148 Misc 2d 260.) With respect to the meaning of the term “evidence” (which should be distinguished from informational disclosure), CPL 610.10 (2) and (3) specifically provide that a subpoena is a process by which a person may be compelled to attend a court proceeding and appear as a witness (i.e., provide oral testimony) or appear and produce certain specified tangible evidence.[2] New York courts have frequently held that a subpoena “may not be used for the purpose of discovery or to ascertain the existence of evidence”. (Matter of Terry D., 81 NY2d 1042, 1044 [1993]; People v Gissendanner, 48 NY2d 543, 551 [1979]; Matter of Constantine v Leto, 157 AD2d 376 [3d Dept 1990], affd 77 NY2d 975; People v Simone, 92 Misc 2d 306, affd 71 AD2d 554, supra; People v Bova, 118 Misc 2d 14; People v Di Lorenzo, supra; People v Cammilleri, supra; People v Morrison, supra.) A subpoena may also not be utilized to “fish for impeaching material.” (People v Hasson, 86 Misc 2d 781, 783; People v Price, 100 Misc 2d 372, supra; Matter of Roman, 97 Misc 2d 782, supra; People v Bova, supra [disclosure of materials denied where defendant claimed that the materials subpoenaed were relevant and material because they could shed light on a possible justification defense and might also provide a source of impeachment material against a key prosecution witness].) In order to benefit from the use of compulsory process a defendant must make a “clear and specific showing that the subpoenaed information is highly material and relevant, is necessary or *733 critical to the maintenance of his defense, and is not obtainable from other available sources.” (People v Bova, supra, at 22 [emphasis added]; People v Di Lorenzo, supra; People v Price, supra; Matter of Roman, supra; see also, United States v Iozia, 13 FED 335.) In connection therewith, a defendant’s offer of proof may not be predicated upon mere speculation (see, People v Baldwin, 211 AD2d 638 [2d Dept 1995]), nor may such be based upon a “potential” for unearthing relevant evidence, it being required that the defendant put forth a factual predicate that would make it “reasonably likely” that the document or documents sought will produce directly relevant and exculpatory evidence. (Matter of Constantine v Leto, supra.) A party cannot utilize compulsory process to search for relevant material, even within a specific set of files, nor should a defendant be allowed to conduct an “ ‘unrestrained “tour of investigation * * * seeking generally useful information” ’ ”. (People v Chambers, 134 Misc 2d, supra, at 692; People v Poole, 48 NY2d 144, 148 [1979]; see also, People v Gissendanner, supra.) Similarly, where the information sought does not bear directly on the issue of a defendant’s guilt or innocence, but rather goes towards the issue of a complainant’s credibility and the impeachment thereof, such information is not properly disclosable. (People v Gissendanner, supra, at 550.) In support of the defendant’s contention that the standard that should be applied by this court in deciding whether the defendant should be permitted access to the subpoenaed e-mail is whether the material could arguably provide some assistance to the defense, the defendant cites People v Bugayong (182 AD2d 450 [1st Dept 1992]; see, contra, People v Serrando, 184 AD2d 1094 [1st Dept 1992]). This court, however, does not find Bugayong to be persuasive, given the facts of the case at bar. In Bugayong the Appellate Division held that certain medical records of the complainant (apparently in the possession of the prosecution) should have been provided to the defendant after the trial court’s in camera review thereof. Bugayong is distinguishable from the case at bar and the cases cited above, since it pertains exclusively to material requested by the defense in a discovery context, not sought pursuant to compulsory process.
In the case at bar, the defendant has failed to establish that the e-mails contain evidence directly relevant to the defendant’s guilt or innocence. Moreover, even if the defendant had successfully demonstrated that the e-mails in question constituted
*734 evidence,[3] he has failed to demonstrate that there are no other means available to him through investigatory due diligence or otherwise, to obtain the information sought from other sources prior to trial.[4] (People v Morrison, 148 Misc 2d 61, supra; United States v Iozia, 13 FRD 335, supra.) The court can only conclude that the defendant’s subpoena of the complainant’s third-party e-mails from Columbia University constitutes nothing more than a “discovery” subpoena — a fishing expedition to attempt to examine the e-mails in the hope that evidence or information helpful to the defense will be discovered, i.e., presumably information regarding the complainant’s sexual history and/or proclivities. This is clearly an improper use of a subpoena duces tecum. (People v Gissendanner, 48 NY2d 543, supra; People v Morrison, supra.) The court is also cognizant of the privacy rights of the complainant in the material subpoenaed in light of thé holding by the Court of Appeals in People v Williams (supra), in which the Court of Appeals expressed the legitimate societal interest of affording protection to victims of alleged sexual crimes from unnecessary invasions of privacy and harassment. Communications between the complainant and third parties other than the defendant (which the court has previously determined through its in camera review are not exculpatory) are not directly relevant to the defendant’s case, since such have no bearing on the defendant’s state of mind at the time the crime was allegedly committed.[5] (See, People v Bova, 118 Misc 2d, supra, at 17.) In Bova, a newspaper *735 published an article in which the complainant was interviewed. In the interview the complainant used a word which arguably conflicted with a prior statement given by the complainant to the police and which the defendant stated could shed light on a possible justification defense by him. The defendant served a subpoena duces tecum on the newspaper seeking all notes, recordings, etc., pertaining to the interview. In its decision quashing the defendant’s subpoena, the court noted that “the defense of justification is founded upon what a defendant reasonably perceives at the time and place of occurrence. The manner in which Dixon [the complainant] characterized the incident * * * has little to do with defendant’s reasonable perception of the events as they were [u]nfolding. The claim that Mr. Dixon’s interview * * * would aid in preparing a justification defense is, at best, exceedingly tenuous.” (Supra.) With respect to the instant case, as stated above, the third-party e-mails by and between the complainant and others have no bearing upon the perceptions of the defendant or his conduct at the time that the crime allegedly occurred.
Accordingly, I find that the defendant has failed to make a clear and specific demonstration that the third-party e-mails subpoenaed from Columbia University are highly material and relevant, are necessary or critical to his defense and that the information contained therein is not obtainable from other sources. Therefore, such documents will not be disclosed to the defendant (accordingly, the prosecution’s request for a protective order is denied as moot). Furthermore, I additionally find that the materials in question are not required to be disclosed to the defendant pursuant to his due process right to a fair trial or pursuant to any other constitutional, statutory or common-law right.
[Portions of opinion omitted for purposes of publication.]

. Notwithstanding such, as a result of the court’s in camera inspection, the defendant was provided with copies of all e-mail communications directly between himself and the complainant, as well as two e-mails between the complainant and a third party (with the name of the third party redacted). With respect to the foregoing, the court found that (i) no right to privacy existed with respect to communications directly between the defendant and the complainant and (ii) the two third-party e-mails contained information that could possibly, when given the broadest possible interpretation, constitute Brady material.

. While CPL 610.25 (2) provides that a subpoena duces tecum may require the production of documentary and other physical evidence prior to trial, this provision pertains to the timing of the production of evidence pursuant to the subpoena and does not alter the statutory requirement that the material whose production is compelled be evidentiary. (People v Morrison, supra.)

. The court notes that while it is not making a determination herein regarding the admissibility at trial of the contents of the e-mails, that from its in camera review of the e-mails it would appear, based upon the weight of authority in this State, that the defendant will have a difficult task demonstrating that the contents of the e-mails are admissible evidence at trial. (See, CPL 60.42; People v Swain, 171 AD2d 765 [2d Dept 1991]; People v Crawford, 143 AD2d 141 [2d Dept 1988]; People v Kellar, 174 AD2d 848 [3d Dept 1991]; People v Baldwin, supra.) In addition, in People v Williams (81 NY2d 303, 313) the Court of Appeals noted that “[i]nsofar as rape shield laws are concerned, the Supreme Court has recognized that they express the States’ legitimate interest in giving rape victims ‘heightened protection against surprise, harassment, and unnecessary invasions of privacy” ” (citation omitted).

. Pursuant to a separate subpoena, the defendant obtained a log containing the e-mail addresses of all of the persons with whom the complainant communicated by e-mail. The defendant, therefore, should have the means available to him to obtain the information he now seeks (through compulsory process), through normal investigative methods.

. The court previously disclosed to the defendant and the prosecution e-mails by and between the defendant and the complainant which were produced pursuant to the defendant’s subpoena to Columbia University.